**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF NEVADA,
　　　　　*Plaintiff-Appellant,*

v.

BANK OF AMERICA CORPORATION;
BANK OF AMERICA NATIONAL
ASSOCIATION; BAC HOME LOANS
SERVICING, LP; RECONSTRUCT
COMPANY, N.A.; COUNTRYWIDE
FINANCIAL CORPORATION;
COUNTRYWIDE HOME LOANS, INC.;
FULL SPECTRUM LENDING, INC.,
　　　　　*Defendants-Appellees.*

No. 12-15005

D.C. No.
3:11-cv-00135-
RCJ-WGC

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Chief District Judge, Presiding

Argued and Submitted
February 8, 2012—Pasadena, California

Filed March 2, 2012

Before: Stephen Reinhardt, Kim McLane Wardlaw, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Wardlaw

## COUNSEL

Catherine Cortez Masto, Binu Palal, Jeffrey Segal, Office of the Nevada Attorney General, Las Vegas, Nevada, Linda Singer, Cohen Milstein Sellers & Toll PLLC, Washington, DC, for plaintiff-appellant State of Nevada.

Matthew W. Close, O'Melveny & Myers LLP, Los Angeles, California, Leslie Bryan Hart, John D. Tennert, Lionel Sawyer & Collins, Reno, Nevada, for defendants-appellees Bank of America Corporation et al.

Bernard A. Eskandari, Office of the California Attorney General, Los Angeles, for amici curiae State of California, State of Oregon, and State of Arizona.

Nina F. Simon, Center for Responsible Lending, Washington, DC, for amici curiae Center for Responsible Lending, AARP, and Consumer Law Center.

---

## OPINION

WARDLAW, Ciruit Judge:

The State of Nevada, through its Attorney General, Catherine Cortez Masto, filed this *parens patriae* lawsuit against Bank of America Corporation and several related entities (collectively, "Bank of America") in Clark County District Court. Nevada alleges that Bank of America misled Nevada consumers about the terms and operation of its home mortgage modification and foreclosure processes, in violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903-.0999. Nevada also alleges that Bank of America violated an existing consent judgment ("Consent Judgment") in a prior case between Nevada and several of Bank of America's subsidiaries, entered in Clark County District Court.

Bank of America removed this action to federal district court, asserting federal subject matter jurisdiction as either a "class action" or "mass action" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and as arising under federal law, 28 U.S.C. § 1331. Denying Nevada's motion to remand, the federal district court concluded that it has jurisdiction over this action as a CAFA "class action," but not as a "mass action," and that it also has federal question jurisdiction because resolving the state claims will require an interpretation of federal law.

We granted Nevada's request for leave to appeal the district court's denial of its motion to remand pursuant to 28 U.S.C. § 1453(c)(1). We conclude that because *parens patriae* actions are not removable under CAFA, and the action does not otherwise satisfy CAFA's "mass action" requirements, the district court lacks jurisdiction under CAFA. We also exercise our interlocutory appellate jurisdiction under 28 U.S.C. § 1453(c) to review the district court's determination that it has federal question jurisdiction because the complaint references the federal Home Affordable Mortgage Program and the Fair Debt Collection Practices Act. We conclude that the district court lacks federal question jurisdiction. Because there is no basis for federal subject matter jurisdiction, this case must be remanded to Nevada state court.

## I.

The Nevada Deceptive Trade Practices Act ("DTPA") authorizes the Nevada Attorney General to "bring an action in the name of the State of Nevada" against any person whom the Attorney General "has reason to believe . . . has engaged or is engaging in a deceptive trade practice." Nev. Rev. Stat. § 598.0963(3). The State of Nevada filed its amended complaint ("Complaint") in the Clark County District Court on January 19, 2011. The Complaint alleges that Bank of America violated the DTPA by misleading Nevada consumers who sought modifications of residential mortgages. It also alleges

that Bank of America violated the terms of a February 24, 2009, Consent Judgment between Nevada and several of the bank's subsidiaries. The Clark County District Court entered the Consent Judgment and retains enforcement jurisdiction.

This action is based on complaints Nevada has reviewed and investigated from more than 150 consumers, housing counselors and other industry sources. The Complaint alleges that Bank of America has engaged in a pattern of misconduct in which it has and continues to:

> a. Mislead consumers with false promises that it will act on their modifications within a set period of time, but keeps them waiting for months, and sometimes more than a year, beyond the promised term;
>
> b. Mislead consumers with assurances that they will not be foreclosed upon while the Bank considered their requests for modifications. However Bank of America has sold the homes of some Nevada consumers and sent foreclosure notices to many more while their requests for modifications were still pending;
>
> c. Misrepresent to consumers that they must be delinquent on their loans in order to qualify for assistance, even though neither Bank of America's proprietary programs nor the federal HAMP[1] program requires that homeowners have missed payments;

[1] The Home Affordable Mortgage Program ("HAMP"), 12 U.S.C. § 5219a, is a federal program whereby the United States government privately contracts with banks to provide incentives to enter into residential mortgage modifications. "In March 2009, the United States Department of Treasury announced the details of the Home Affordable Modification Program as part of the Making Home Affordable Program. Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives." *Newell v. Wells Fargo Bank, N.A.*, 2012 WL 27783, at *1 (N.D. Cal. Jan. 5, 2012).

d. Mislead consumers with false promises that their initial, trial modifications would be made permanent if and when they made the required three payments on those plans, but then failed to convert those modifications;

e. Tell consumers their modifications were denied for reasons that were untrue, such as that: (i) the owner of the loan refused to allow the modification when Bank of America had full authority to modify the loan without the investor's approval; (ii) the Bank had tried unsuccessfully to reach the consumer, even though the consumer repeatedly called the Bank; (iii) the loan was previously modified when it was not; (iv) the borrower failed to make trial payments, when they made all payments; and (v) the borrower was current on his or her loan, when delinquency is not a condition of a modification;

f. Falsely notify consumers or credit reporting agencies that consumers are in default when they are not;

g. Mislead consumers with offers of modification on one set of terms, and then provide agreements with materially different terms, or inform consumers that their modifications had been approved, but then tell them that their requests were denied, often months before.

The Complaint also alleges that Bank of America is in contempt of the Consent Judgment because of its failure to offer loan modifications to eligible consumers and its practice of conducting foreclosures while consumers are being considered for modifications. The Complaint seeks declaratory and injunctive relief, civil penalties, restitution for defrauded Nevada consumers, attorney's fees and the costs of investigation.

Bank of America removed the case to the United States District Court for the District of Nevada on February 23, 2011, asserting three theories of federal jurisdiction: (1) jurisdiction under CAFA, as both a "class action," 28 U.S.C. § 1332(d)(2)-(10), and a "mass action," 28 U.S.C. § 1332(d)(11); (2) federal question jurisdiction, 28 U.S.C. §§ 1331, 1441(b); and (3) bankruptcy jurisdiction, 28 U.S.C. §§ 1334(b), 1452. On March 22, 2011, Nevada moved to remand the case to state court.

The district court denied Nevada's remand motion on July 5, 2011, concluding that the case was a "class action" under CAFA, 28 U.S.C. § 1332(d). As an alternative basis for federal jurisdiction, the district court concluded that the case presented a federal question under 28 U.S.C. § 1331. The district court also determined that the case did not satisfy CAFA's "mass action" prong, 28 U.S.C. § 1332(d)(11). On July 15, 2011, Nevada timely requested permission to appeal the denial of the remand motion pursuant to 28 U.S.C. § 1453(c). We held the petition for permission to appeal in abeyance pending disposition of *Washington v. Chimei Innolux Corp.*, 659 F.3d 843 (9th Cir. 2011), which presented the question of whether a state Attorney General *parens patriae* action is a "class action" as defined by CAFA, and then accepted the appeal on January 3, 2012.

## II.

"Determinations regarding subject matter jurisdiction are reviewed de novo." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1043 (9th Cir. 2011) (citation omitted). "We review the 'construction, interpretation, or applicability' of CAFA de novo." *Chimei*, 659 F.3d at 846-47 (quoting *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 686 (9th Cir. 2005)). "We review de novo a district court's denial of a motion to remand to state court for lack of federal subject matter jurisdiction." *Chapman*, 651 F.3d at 1043 (citation omitted). Removal statutes are to be "strictly construed" against

removal jurisdiction. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (citation omitted).

## III.

We first consider whether the district court correctly concluded that this case was removable under CAFA. CAFA provides for the removal of class actions and mass actions involving parties with minimal diversity. 28 U.S.C. § 1332(d)(2)(A). Under CAFA, a "class action" is defined as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). A "mass action" is defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i).

## A.

**[1]** Since the district court issued its order holding that this action is a CAFA "class action," we have held to the contrary. In *Washington v. Chimei Innolux Corp.*, we held that attorney general enforcement actions are not removable as "class actions" under CAFA. 659 F.3d at 847. In *Chimei*, the attorneys general of Washington and California brought *parens patriae* suits under their states' antitrust laws, alleging that a group of manufacturers and distributors engaged in a conspiracy to fix the prices of certain liquid crystal display panels. *Id.* at 846. The defendants removed the cases to federal court, arguing that "consumers were the real parties in interest for the monetary relief claims, and that therefore the States' *parens patriae* claims were disguised class actions removable under CAFA." *Id.* We rejected this argument, noting that "*[p]arens patriae* suits lack the defining attributes of true class actions. As such, they only 'resemble' class actions in

the sense that they are representative suits." *Id.* at 850. *See also LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 772 (7th Cir. 2011) (*parens patriae* suit not a "class action" because the "case was brought by the Attorney General, not by a representative of a class"); *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.,* 646 F.3d 169, 174-76 (4th Cir. 2011) (West Virginia Attorney General's *parens patriae* action to enforce consumer protection statute not removable under CAFA because state statute lacked the procedural requirements of Rule 23).

**[2]** Our decision in *Chimei*, which Bank of America concedes controls our decision as to whether this action is a CAFA class action, makes clear that it cannot be so characterized.

## B.

**[3]** Bank of America next argues that Nevada's action is nevertheless removable as a "mass action" under 28 U.S.C. § 1332(d)(11). A mass action is defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the [$75,000] jurisdictional amount requirement" set forth in § 1332(a). 28 U.S.C. § 1332(d)(11)(B)(i).

**[4]** The district court ruled that this action does not qualify as a "mass action" under the "event or occurrence" exclusion in CAFA, which expressly provides that the term "mass action" excludes any civil action in which "all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State . . . ." 28 U.S.C. § 1332(d)(11)(B)(ii)(I). The district court reasoned that it lacked mass action jurisdiction because "the claims all allegedly arise from activity in

Nevada and all injuries allegedly resulted in Nevada." This was a misapplication of the "event or occurrence" exclusion.

**[5]** The "event or occurrence" exclusion applies only where all claims arise from a *single* event or occurrence. "[C]ourts have consistently construed the 'event or occurrence' language to apply only in cases involving a single event or occurrence, such as an environmental accident, that gives rise to the claims of all plaintiffs." *Lafalier v. Cinnabar Serv. Co., Inc.*, 2010 WL 1486900, at *4 (N.D. Okla. Apr. 13, 2010). Moreover, the legislative history of CAFA supports this interpretation, making clear that the exception was intended to apply "only to a truly local single event with no substantial interstate effects" in order to "allow cases involving environmental torts such as a chemical spill to remain in state court if both the event and the injuries were truly local." S. Rep. No. 109-14, at 41 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 44. The Complaint in this case alleges widespread fraud in thousands of borrower interactions, and thus this action does not come within the "event or occurrence" exclusion.[2] Therefore, we hold that the "event or occurrence" exclusion, 28 U.S.C. § 1332(d)(11)(B)(ii)(III), does not apply to this action.

**[6]** We have not yet had occasion to decide whether a state's *parens patriae* action is removable as a mass action. The two circuits that have addressed this question, the Seventh and Fifth, have reached conflicting results. *See Madigan*, 665 F.3d at 772 (*parens patriae* suit not a mass action because the Attorney General is the only plaintiff); *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 429 (5th Cir. 2008) (state's *parens patriae* antitrust action against insurance companies qualifies as mass action because insurance policyholders are the "real parties in interest").

---

[2]Nevada did not argue below for application of the "event or occurrence" exclusion, and does not attempt to justify the district court's conclusion on appeal.

In *Madigan*, the Illinois Attorney General filed an action in state court against manufacturers of liquid crystal display panels for violations of the Illinois Antitrust Act. 665 F.3d at 769. The complaint sought injunctive relief, civil penalties, and treble statutory damages for the state as a purchaser and, as *parens patriae*, for injured residents. *Id.* Concluding that the suit was not a mass action, the Seventh Circuit reasoned that it did not involve "monetary relief claims of 100 or more persons . . . proposed to be tried jointly," as required by CAFA, because "only the Illinois Attorney General makes a claim for damages (among other things), precisely as authorized by the IAA." *Id.* at 772. The Seventh Circuit also reasoned that a suit is not a "mass action" if " 'all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action,' " quoting the statutory language of § 1332(d)(11)(B)(ii)(III). *Id.*

The *Madigan* defendants argued, like Bank of America here, that the court should apply a "claim by claim" analysis to conclude that the action was "really" to recover damages for the hundreds of persons who purchased the unlawfully priced LCD panels and that those purchasers were the real parties in interest for the non-enforcement-related claims in the suit, thus satisfying the "mass action" requirements. *Id*. at 772-73. The Seventh Circuit rejected this approach, instead looking at the complaint as a whole, and concluding that the State was the real party in interest. *Id.* at 774. It reasoned, "Whether a state is the real party in interest in a suit 'is a question to be determined from the essential nature and effect of the proceeding.' " *Id.* at 773 (quoting *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 250 (7th Cir. 1981)) (internal quotation marks omitted).

In *Caldwell*, on the other hand, the Fifth Circuit adopted this "claim-by-claim" approach to identify the real party in interest in a *parens patriae* action brought by the State of Louisiana. *Caldwell*, 536 F.3d at 430. Louisiana filed an anti-

trust suit in state court against several insurance companies, seeking to enforce the Louisiana Monopolies Act and to recover treble damages, among other relief. *Id.* at 423. The Fifth Circuit dissected the claims to "conclude that as far as the State's request for treble damages is concerned, the policyholders are the real parties in interest," because the plain language of the Monopolies Act authorized only injured individuals to recover for treble damages. *Id.* at 429. Louisiana's argument that it was the real party in interest was belied by the language in the complaint, which sought recovery of "damages suffered by *individual policyholders*." *Id*. at 428 (emphasis in original). The Fifth Circuit also relied upon the essential nature of an antitrust proceeding, reasoning that "given that the purpose of antitrust treble damages provisions are to encourage private lawsuits by aggrieved individuals for injuries to their business or property," it had no reason to believe that individual policyholders were not the real parties in interest. *Id.* at 430 (citing *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 (1972)).

**[7]** As both sides agree, the characterization of this case as a "mass action" thus turns on whether the State of Nevada or the hundred-plus consumers on whose behalf it seeks restitution are the real party(ies) in interest. This determination affects both CAFA's numerosity requirement, 28 U.S.C. § 1332(d)(11)(B)(i), and its minimal diversity requirement, § 1332(d)(2)(A), because defendants are not citizens of Nevada and Nevada is not a citizen for purposes of diversity analysis, *Dyack v. N. Mariana Islands*, 317 F.3d 1030, 1037 (9th Cir. 2003).

Relying on our recent decision in *Department of Fair Employment and Housing v. Lucent Technologies, Inc.*, 642 F.3d 728 (9th Cir. 2011), the district court, though recognizing that "district courts are mainly in agreement that when a state attorney general brings such a case, the fact that a discrete class of individuals will receive restitution does not defeat the fact that the gravamen of the action is protection of

the public welfare," nevertheless concluded that the individual consumers are the real parties in interest for the restitution, declarative and injunctive claims for relief.

In *Lucent*, we considered whether the district court had diversity jurisdiction over an action filed by the California Department of Fair Employment and Housing ("DFEH") on behalf of a single aggrieved employee. *Id.* at 735. This question turned on whether DFEH or the employee was the real party in interest, because if the State had only the general interest it holds on behalf of all its citizens and their welfare, it would not satisfy the "real party to the controversy requirement for the purposes of defeating diversity" jurisdiction. *Id.* at 737. Though the statute at issue, the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*, declares the State's interest in protecting all persons from employment discrimination, that governmental interest was too "general" to render the State a real party in the controversy. *Lucent*, 642 F.3d at 738. Moreover, the relief sought included reinstatement and payment of compensatory and punitive damages to the aggrieved individual, who was also able to secure the equitable relief sought by the State. *Lucent*, 642 F.3d at 739. Any relief that was unique to DFEH was "tangential" to the relief sought for the employee, and thus could not render DFEH a real party in interest. *Id.*

**[8]** Our rationale for finding that the aggrieved individual was the real party in interest in *Lucent* compels the conclusion that Nevada is the real party in interest here. Unlike the California DFEH, which sued on behalf of a *single* aggrieved employee, here, the Nevada Attorney General sued to protect the hundreds of thousands of homeowners in the state allegedly deceived by Bank of America, as well as those affected by the impact of Bank of America's alleged frauds on Nevada's economy. In *Lucent*, we addressed whether there was a "substantial state interest" separate and distinct from the relief sought on behalf of the individual; there, the interests that were unique to the State were merely "tangential."

*Id.* Furthermore, in *Lucent* we adopted the approach of looking at the case as a whole to determine the real party in interest, rather than the claim-by-claim approach adopted in *Caldwell* and advocated by Bank of America. *Id.* at 740 (quoting *Geeslin v. Merriman*, 527 F.2d 452, 455 (6th Cir. 1975), for the proposition that "[t]he question as to whether or not the state is the real party in interest must be determined by the essential nature and effect of the proceeding as it appears from the entire record").

We therefore examine "the essential nature and effect of the proceeding as it appears from the entire record," *Lucent*, 642 F.3d at 740, and conclude that Nevada—not the individual consumers—is the real party in interest in this controversy. Nevada brought this suit pursuant to its statutory authority under the DTPA because of its interest in protecting the integrity of mortgage loan servicing. Unlike in *Caldwell*, there is no doubt that the Attorney General has statutory authority to pursue such claims. Foreclosures work a widespread and devastating injury not only to those borrowers who are defrauded, but also on other Nevada residents and the Nevada economy as a whole. Nevada has been particularly hard-hit by the current mortgage crisis, and has a specific, concrete interest in eliminating any deceptive practices that may have contributed to its cause. *Cf. Lucent*, 642 F.3d at 738 (state's interest too "general" to render it a party in interest). The Center for Responsible Lending estimates that from 2009 to 2012, foreclosures on neighboring homes will result in lost home equity in nearly one million homes across Nevada, amounting to total lost home equity of $54.5 billion.[3] The city of Las Vegas has the second highest foreclosure rate in the nation.[4] Considering the devastating effect of the foreclosure

---

[3]Ctr. for Responsible Lending, *The Cost of Bad Lending in Nevada* (Aug. 2011), *available at* www.responsiblelending.org/mortgage-lending/tools-resources/factsheets/nevada.html.

[4]Debbie Bocian, *et al., Lost Ground 2011: Disparities in Mortgage Lending and Foreclosures* at Appendix 2 (Nov. 2011), *available at* www.responsiblelending.org/mortgage-lending/research-analysis/lost-ground-2011.html.

crisis on Nevada, it is unsurprising that the Attorney General would exercise her statutory right to "bring an action in the name of the State of Nevada" against any person whom she "has reason to believe . . . has engaged or is engaging in a deceptive trade practice" related to mortgage-financing. Nev. Rev. Stat. § 598.0963(3).

[9] Nevada's sovereign interest in protecting its citizens and economy from deceptive mortgage practices is not diminished merely because it has tacked on a claim for restitution. *See, e.g.*, *Madigan*, 665 F.3d at 773-74 (*parens patriae* suit not removable under CAFA despite claim for treble damages on behalf of harmed residents). In *Chimei*, although we did not reach the issue of whether a claim for restitution in a consumer protection action rendered the consumers the real parties in interest, the district court had concluded that "the States of California and Washington are the real parties in interest because both States have a sovereign interest in the enforcement of their consumer protection and antitrust laws . . . [and] in securing an honest marketplace and the economic well-being of their citizens." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 560593, at *5 (N.D. Cal. Feb. 15, 2011). Here, as in *Chimei*, the restitution that Nevada seeks, "while on behalf of its consumers, would first be paid to the State and distributed on an equitable basis." *Id.* That individual consumers may also benefit from this lawsuit does not "negate [Nevada's] substantial interest[ ] in [this] case[ ]." *Id. See also City & Cnty. of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1126 (9th Cir. 2006) ("In this case, as in every case involving restitution, a successful result for the governmental entities may well result in money being paid to private parties . . . . However, the . . . restitution claims filed by the governmental entities in this case are fundamentally law enforcement actions designed to protect the public.") Similarly, any award of restitution damages here would be paid directly to Nevada and then distributed to individual consumers. *See* Nev. Rev. Stat. § 598.0975(3)(b).

In a virtually identical action brought by the Arizona Attorney General against Bank of America, the District Court of Arizona also reasoned that the fact "[t]hat some private parties may receive restitution does not negate the State's substantial interest or render the entire action removable." *Arizona ex rel. Horne v. Countrywide Fin. Corp.*, No. CV-11-00131-FJM, 2011 WL 995963, at \*3 (D. Ariz. Mar. 21, 2011). As in the Arizona case, the State of Nevada is the real party in interest because of its "interest in 'protecting the integrity of the residential mortgage loan business' and preventing consumer fraud in loan modifications and foreclosures." *Id.* Moreover, "the State has an interest in the enforcement of its own state court judgment and its consumer fraud laws." *Id.*

The state's strong and distinct interest in this litigation is further strengthened by the other forms of relief it seeks. Unlike in *Lucent*, where the interests that were unique to DFEH's lawsuit were "tangential," here Nevada seeks substantial relief that is available to it alone. First, it seeks enforcement of the Consent Judgment, which explicitly disclaims a private right of action. Second, it seeks civil penalties under the DTPA, which are not available to individual consumers. *See* Nev. Rev. Stat. § 598.0999(2). Third, it seeks injunctive relief, with respect to which the State faces a much lower standard of proof than would be required for a lawsuit brought by individual consumers. Under Nevada law, "[t]o obtain injunctive relief in a statutory enforcement action [alleging a deceptive trade practice], a state or government agency need only show . . . a reasonable likelihood that the statute was violated." *Nevada ex rel. Office of the Att'y Gen. v. NOS Commc'ns, Inc.*, 84 P.3d 1052, 1055 (Nev. 2004). A private party, on the other hand, would be required to satisfy the higher burden of demonstrating irreparable harm and an inadequate legal remedy. *Id.* at 1054. Fourth, Nevada seeks to recoup the costs of its substantial investigation into Bank of America's practices.

**[10]** The Complaint, read as a whole, demonstrates that Nevada is the real party in interest in this action. Therefore, neither CAFA's minimal diversity requirement, 28 U.S.C. § 1332(d)(2)(A), nor its numerosity requirement, 28 U.S.C. § 1332(d)(11)(B)(i), is satisfied. The State of Nevada is the real party in interest, so the action falls 99 persons short of a "mass action."[5]

## IV.

As an alternative basis for its exercise of jurisdiction over this action, the district court held that it had federal question jurisdiction because resolution of the State's claims "necessarily requires the construction of federal law." Although the Complaint alleges purely state law claims, the district court concluded that it would be required to construe HAMP to determine whether Bank of America misrepresented what the HAMP program permits or requires. Bank of America contends that our interlocutory appellate jurisdiction does not extend to review of this jurisdictional basis. We disagree, and conclude that the district court lacks federal question jurisdiction over this action.

## A.

Under CAFA, "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order." 28 U.S.C. § 1453(c)(1). Section 1453(c) modifies 28 U.S.C. § 1447(d),

---

[5]Because we conclude that this case is not a mass action, we need not decide whether it falls under the "general public" exception to mass action jurisdiction. *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(III) (providing that the term "mass action" does not include any action in which "all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action").

which sets forth the general rule that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." Bank of America contends that § 1453(c)(1) confers appellate jurisdiction limited to the CAFA issues in the district court's order, and that Nevada's failure to also seek certification under 28 U.S.C. § 1292(b) of the district court's decision that it has federal question jurisdiction precludes appellate review.

**[11]** We have not previously addressed whether we possess appellate jurisdiction over a non-CAFA issue decided in an order appealable under § 1453(c)(1), although the question seems straightforward. The plain language of § 1453(c)(1) confers jurisdiction over "an order of a district court granting or denying a motion to remand a class action." 28 U.S.C. § 1453(c)(1). The Tenth Circuit recently "concluded that it was 'free to consider any potential error in the district court's decision, not just a mistake in application of the Class Action Fairness Act.' " *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1247 (10th Cir. 2009) (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451-52 (7th Cir. 2005)). We are also guided by the Supreme Court's conclusion that an appellate court's interlocutory jurisdiction under 28 U.S.C. § 1292(b) permits it to "address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court." *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996). Moreover, it is well established that "a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action, even on appeal." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

Bank of America's reliance on *Anderson v. Bayer Corp.*, 610 F.3d 390 (7th Cir. 2010), and *Patterson v. Dean Morris, L.L.P.*, 448 F.3d 736 (5th Cir. 2006), is misplaced. In each of those appeals, the circuit courts reviewed orders by the district courts that had remanded to state court cases removed under

CAFA for failure to satisfy CAFA's removal requirements. On appeal, the Fifth and Seventh Circuits affirmed the district courts' remand orders, and determined that they lacked jurisdiction to consider other jurisdictional bases for removal to federal court because orders granting remand are generally non-reviewable under 28 U.S.C. § 1447(d). *See Anderson*, 610 F.3d at 394; *Patterson*, 448 F.3d at 742. Each circuit decision reasoned that it would be statutorily prohibited from reviewing the non-CAFA issue if that had been the district court's sole basis for remand. *See Anderson*, 610 F.3d at 394 ("Typically, federal courts of appeal are barred from reviewing district court orders remanding removed cases to state court."); *Patterson*, 448 F.3d at 742 (after concluding that CAFA is inapplicable, "[a]ll that remains is an order equitably remanding these actions under § 1452(b), which we cannot reach without contravening a plain statutory command"). Conversely, here, we review an order denying remand on both CAFA and federal question grounds. There is no equivalent statutory constraint on our power to exercise appellate jurisdiction over an order *denying* remand. *See, e.g.*, *Sheeran v. Gen. Elec. Co.*, 593 F.2d 93, 97 (9th Cir. 1979).

**[12]** We therefore conclude that because § 1453(c)(1) permits appellate review of remand orders "notwithstanding section 1447(d)," we have the discretion to entertain the issue of whether another basis for federal jurisdiction exists that would justify the district court's denial of Nevada's motion. Given the well-established principle that we may affirm the district court's order on any ground fairly presented in the record, *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 994 (9th Cir. 2009), we exercise our discretion to consider whether the district court correctly concluded that it had federal question jurisdiction. *See Coffey*, 581 F.3d at 1247 ("There is no language [in § 1453(c)(1)] limiting the court's consideration solely to the CAFA issues in the remand order.").

We reject Bank of America's suggestion that, in these circumstances, Nevada could only obtain interlocutory review of

the issue of federal question jurisdiction through the certification process as both impractical and contrary to the purposes of CAFA. As the legislative history of CAFA demonstrates, the purpose of § 1453(c) " 'is to develop a body of appellate law interpreting [CAFA] without unduly delaying the litigation of class actions.' " *Coffey*, 581 F.3d at 1247 (quoting S. Rep. No. 109-14, at 49, *reprinted in* 2005 U.S.C.C.A.N. at 46) (alterations in original). To secure expedited review, § 1453(c)(2) requires that once the appellate court accepts the appeal of the order, it "shall complete all action on such appeal, including rendering judgment, not later than 60 days after the date on which such appeal was filed . . . ." Section 1292(b) does not contain a similar time constraint for review. Requiring compliance with the certification process for review of an independent basis for the district court's exercise of jurisdiction could delay the litigation indefinitely, thus undermining the very purpose of CAFA. While the CAFA issues would be resolved within 60 days, the district court and the parties would remain in the dark as to whether they should proceed in state or federal court. In enacting CAFA, Congress could not have intended such an absurd result.

**B.**

Declining to exercise our discretion to determine whether the district court has federal question jurisdiction under 28 U.S.C. § 1331 over this case would result in wasted judicial resources where, as here, we conclude that there is no federal question jurisdiction.

**[13]** The Supreme Court has never stated a "single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (internal quotation marks and citation omitted). A state cause of action invokes federal question jurisdiction only if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum

may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* This type of federal question jurisdiction applies to a "special and small category" of cases, into which this case does not fall. *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 699 (2006).

**[14]** Here, the Complaint raises exclusively state law claims. Nevada alleges that Bank of America violated the DTPA and the Consent Judgment. The Complaint does allege misrepresentations about the federal HAMP program and violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Specifically, the Complaint alleges that Bank of America "[m]isrepresent[ed] to consumers that they must be delinquent on their loans in order to qualify for assistance, even though neither Bank of America's proprietary programs nor the federal HAMP program requires that homeowners have missed payments." The Complaint also alleges that Bank of America's misrepresentations to credit agencies concerning consumers' credit history "violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e(2)(A) & (8), and, as a result, the Nevada Deceptive Trade Practices Act."

**[15]** By so alleging, Nevada does not "necessarily raise a . . . substantial" issue of federal law. *Grable*, 545 U.S. at 314. The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). The federal issues here are not "pivotal" to Nevada's case. *Lippitt v. Raymond James Fin. Servs. Inc.*, 340 F.3d 1033, 1046 (9th Cir. 2003). The gravamen of the Complaint is that Bank of America violated Nevada's DTPA through numerous misrepresentations, some about the HAMP program, and some which also violate the FDCPA. For example, Nevada alleges that Bank of America violated the DTPA by: "promising to act upon requests for mortgage modifications within a specific period of time" and then failing to do so; giving consumers "false assurances that their homes

would not be foreclosed while their requests for modifications were pending"; providing "inaccurate and deceptive reasons for denying . . . requests for modifications"; and "misrepresenting that consumers [had] been approved for modifications." "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).

Nor does the Complaint's reference to the FDCPA necessarily raise a substantial issue of federal law. The Nevada DTPA includes a "borrowing" provision, making it a violation of the DTPA to "[v]iolate[ ] a state or federal statute or regulation relating to the sale or lease of goods or services." Nev. Rev. Stat. § 598.0923(3). California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, contains a similar "borrowing" provision, and "California district courts have held that mere references to federal law in UCL claims do not convert the claim into a federal cause of action." *Guerra v. Carrington Mortg. Servs. LLC*, 2010 WL 2630278, at *2 (C.D. Cal. June 29, 2010) (citations omitted); *see also Garduno v. Nat'l Bank of Ariz.*, 738 F. Supp. 2d 1004, 1009 (D. Ariz. 2010). Bank of America concedes that the mere use of a federal statute as a predicate for a state law cause of action does not necessarily transform that cause of action into a federal claim, but asserts that this case is an exception to the general rule because it poses substantial questions about the scope and applicability of the FDCPA—specifically, whether the FDCPA applies at all to mortgage loan servicers. However, the Supreme Court has cautioned against finding federal question jurisdiction on the ground that a case presents a novel issue of federal law: "We do not believe the question whether a particular claim arises under federal law depends on the novelty of the federal issue." *Merrell Dow*, 478 U.S. at 817. Therefore, Nevada's

glancing reference to federal law is insufficient to confer federal jurisdiction over Nevada's state law claims.

Even where a state law claim does necessarily turn on a substantial and disputed question of federal law, removal is subject to a "possible veto" where exercising federal jurisdiction is not "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313. The exercise of federal jurisdiction must not "disturb[ ] any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. The Supreme Court has instructed federal courts to approach 28 U.S.C. § 1331 " 'with an eye to practicality and necessity.' " *Merrell Dow*, 478 U.S. at 810 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 20 (1983)). The Court has "consistently emphasized that, in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Id.*

Here, unlike in *Grable*, exercising federal question jurisdiction would have more than a "microscopic effect on the federal-state division of labor." *Grable*, 545 U.S. at 315. State courts frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes. Exercising federal question jurisdiction over any state law claim that references a federal consumer protection statute would "herald[ ] a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 319.

**[16]** The Nevada Attorney General brought this *parens patriae* action in state court to enforce its own state consumer protection laws. Nevada alleges only state law causes of action, brought to protect Nevada residents. Under these circumstances, the "claim of sovereign protection from removal arises in its most powerful form." *McGraw*, 646 F.3d at 178 (internal quotation marks omitted). "[C]onsiderations of com-

ity make [federal courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd.*, 463 U.S. at 21 n.22. Removing a state's action from its own courts must "serve[ ] an overriding federal interest." *McGraw*, 646 F.3d at 178. Bank of America has not demonstrated that any "clear rule demands" removal, nor that removal "serves an overriding federal interest." Therefore, Nevada's strong sovereign interest in enforcing its state laws—and its state-law-created Consent Judgment—in the courts of its own state weighs in favor of remand to its state court system.

## V.

**[17]** For the foregoing reasons, we reverse the district court's order denying Nevada's motion to remand. The district court is instructed to remand this case to the Eighth Judicial District Court in Clark County, Nevada.

**REVERSED.**