FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHAN HEALTHCARE GROUP, PS, a Washington professional services corporation, *Plaintiff-Appellee/Respondent*, v. LIBERTY MUTUAL FIRE INSURANCE CO.; LIBERTY MUTUAL INSURANCE COMPANY, foreign insurance companies, *Defendants-Appellants/Petitioners.* | Nos. 16-35210 16-80019 D.C. No. 2:15-cv-01705-RSM OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief Judge, Presiding

Argued and Submitted December 6, 2016
Seattle, Washington

Filed January 3, 2017

Before: M. Margaret McKeown, Richard C. Tallman,
and Morgan B. Christen, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY[*]

### Removal / Remand

The panel (1) dismissed a petition for permission to appeal the district court's remand order in a class action case founded on federal question jurisdiction and (2) vacated the district court's order granting attorneys' fees.

Joining the Fifth, Sixth, and Eighth Circuits, the panel held that the interlocutory review provision set forth in the Class Action Fairness Act, 28 U.S.C. § 1453(c)(1), is limited to orders granting or denying remand of diversity class actions brought and removed under CAFA. Therefore, under 28 U.S.C. § 1447(d), the panel lacked jurisdiction to review the district court's order remanding the case to the state court from which it had been removed.

The panel vacated the district court's award of attorneys' fees to the plaintiff under 28 U.S.C. § 1447(c). The district court awarded attorneys' fees on the ground that that the defendant lacked an objective basis for removal because the notice of removal was untimely under § 1446(b). The panel held that the notice of removal was timely filed within thirty days after receipt of plaintiff's state court reply brief, which was the first filing that referenced a federal due process claim. The panel remanded the case to the district court.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Joshua S. Lipshutz (argued) and Joseph C. Hansen, Gibson Dunn & Crutcher LLP, San Francisco, California; Russell R. Yager, Vinson & Elkins LLP, Dallas, Texas; John M. Silk, Wilson Smith Cochran Dickerson, Seattle, Washington; for Defendants-Appellants/Petitioners.

David Elliott Breskin (argued) and Cynthia J. Heidelberg, Breskin Johnson & Townsend PLLC, Seattle, Washington, for Plaintiff-Appellee/Respondent.

## OPINION

McKEOWN, Circuit Judge:

This consolidated appeal presents an issue of first impression in our circuit, namely the scope of appellate jurisdiction to review a district court's remand order in a class action case founded on federal question jurisdiction. Remand orders are not appealable as a matter of course. 28 U.S.C. § 1447(d). Nonetheless, as part of the Class Action Fairness Act of 2005 ("CAFA"), Congress created an exception under 28 U.S.C. § 1453(c)(1) that permits courts of appeals to accept appeals from remand orders in cases that are removed "under this section." Joining our sister circuits, we conclude that this interlocutory review provision is limited to orders granting or denying remand of diversity class actions brought and removed under CAFA.

## Background

This case has a long and tortured procedural history that spans a series of interrelated lawsuits. One player is central

to the action: attorney David Breskin, who represented plaintiff Dr. David Kerbs in previous rounds of litigation and who represents Chan Healthcare Group, PS ("Chan") in two ongoing disputes, including this one.

Breskin got things going in 2010. On May 13 of that year, he filed a putative class action on behalf of Dr. Kerbs in Washington state court against defendants Safeco Insurance Company of Illinois, Inc. and Safeco Insurance Company of America (collectively "Safeco"). Dr. Kerbs alleged that Safeco violated Washington law by using a computerized bill-review system that automatically reduced the amounts paid to medical providers pursuant to Personal Injury Protection coverage in automobile insurance contracts. The superior court certified a class of "Washington health care providers who, from May 13, 2006, through March 31, 2011, submitted [claims] to Safeco for payment" under their patients' Personal Injury Protection policies and received "less than the amount billed based solely on a [computerized] reduction."

In May 2012, Dr. Kerbs and Safeco reached a class-wide settlement agreement in which Safeco agreed to pay the class members for Safeco's past conduct. As to future claims, Safeco agreed, among other things, to stop using the computerized bill-review system and start using the "FAIR Health database" to determine the proper amount of reimbursement. In approving the settlement, the superior court explained that the use of the FAIR Health database "does not, in and of itself, breach any duty or obligation under any applicable law or contract requiring Safeco to pay

or reimburse 'usual and customary' or 'reasonable' charges for Covered Treatments."[1]

In 2014, the drama continued in another state: Lebanon Chiropractic Clinic, P.C. ("Lebanon") commenced a separate class action lawsuit—based on the same allegedly improper reductions of reimbursements to medical providers—in Illinois state court against Safeco and its parent, Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company (collectively, "Liberty"). *Lebanon Chiropractic Clinic, P.C. v. Liberty Mut. Ins. Co.*, No. 5-15-0111, 2016 WL 546909, at \*1 (Ill. App. Ct. Feb. 9, 2016). This new case—filed without Breskin's involvement—was not limited to one state, but instead challenged Safeco's and Liberty's review and payment practices in multiple states, including both Illinois and Washington. *See id.* at \*2.

In October 2014, Lebanon, Safeco, and Liberty reached a settlement agreement eerily similar to the one reached in the earlier Washington state case. Like the settlement in the *Kerbs* case, "with regard to future claims, Liberty agreed to implement certain measures, such as the continued use of the FAIR Health database." *Id.* at \*3. After preliminary approval of the settlement agreement, Breskin reentered the scene.

---

[1] Breskin brought two separate class action lawsuits in Washington state court against other insurers, both of which resulted in settlements that allowed use of the FAIR Health database. The courts there similarly determined that the "use of FAIR Health data in the payment of [Personal Injury Protection] claims does not, in and of itself, breach any applicable duty or law."

Breskin, on behalf of Dr. Kerbs, objected to the settlement, contending that the proposed settlement conflicted with the *Kerbs* settlement in the earlier Washington case (as well as that the proposed settlement was generally unfair to Washington providers and the Illinois court did not have jurisdiction). Simultaneously, Breskin unsuccessfully petitioned the Washington state court to reopen the *Kerbs* case and enjoin the proposed settlement in Illinois. *Id.* at *4. Although the Illinois court concluded that there was no conflict between the proposed settlement and the earlier *Kerbs* settlement, it ordered that the proposed settlement "include[] specific language that the Lebanon settlement would not conflict in any way with the *Kerbs* settlement." *Id.* at *5. Dr. Kerbs did not prevail in his appeal regarding the Illinois settlement. *See id.* at *15.

This history provides the necessary backdrop to understanding the appeal before us. While the *Lebanon* appeal in Illinois was still pending, Breskin filed two new offensive class action lawsuits in Washington state court. The first, filed in August 2015, was filed on behalf of Chan against Safeco (the *Safeco* case). The second, filed in early September 2015, was filed on behalf of Chan against Liberty and is the case on appeal to us (the *Liberty* case). The complaints make similar allegations that Safeco's and Liberty's use of the FAIR Health database to set reimbursement amounts violates various Washington statutes. All parties agree that, on the face of the complaint in the *Liberty* case, there was no basis for federal jurisdiction.

Liberty asserts that things changed when Chan filed its reply brief on its motion for declaratory relief. In the initial motion, filed on October 2, 2015, Chan sought a declaratory judgment that the Illinois settlement was unenforceable in

Washington.  After Liberty responded that it "might elect simply to forego raising *Lebanon* as a defense in this case," Chan argued in its October 26, 2015 reply that "the *Lebanon* agreement could not be applied to bar Chan's Washington [state law] claim against [Liberty] consistent with Chan's due process rights."

On the basis of Chan's reply brief, Liberty removed the case to federal court two days later, on October 28, 2015. Liberty explained that Chan's reply brief revealed that Chan was raising a standalone federal due process claim, thus creating federal question jurisdiction under 28 U.S.C. § 1331.  Because Liberty contended that Chan first raised the federal question in the litigation in its reply brief, Liberty argued that its removal fell "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).

Based on various papers received and filings made in this case and other cases more than thirty days before Liberty removed, Chan challenged the timeliness of Liberty's removal.  Chan also argued that there was no federal question jurisdiction because its federal due process claim was not raised as an affirmative claim, but instead in response to Liberty's assertion of the Illinois settlement as a defense.

The district court granted Chan's motion to remand the case to state court based solely on the ground that removal was untimely.  The court explicitly declined to reach whether federal question jurisdiction was present.  The court also awarded fees to Chan, in the amount of $18,330.00, after finding that Liberty "had no objectively reasonable basis for

removal, particularly given defense counsel's involvement with the related cases and their acknowledgments about the Chan motions made to the court in the Illinois appeal."

Liberty petitions for review of the district court's remand order and appeals the fee award.

## Analysis

### I.  Jurisdiction to Review the Merits of the Remand Order

The default rule on remand orders is that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d); *see Kircher v. Putnam Funds Trust*, 547 U.S. 633, 641 (2006) (explaining that § 1447(d) usually "stands in the way" of reviewing a district court's remand order); *Watkins v. Vital Pharm., Inc.*, 720 F.3d 1179, 1181 (9th Cir. 2013) (per curiam) ("District court remand orders generally are not reviewable on appeal.").

At issue here is a congressional carve-out of appellate jurisdiction that was adopted for class action cases as part of CAFA.  Section 1453(c)(1), entitled Review of Remand Orders, provides that, when a case is removed "under this section," "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action."  28 U.S.C. § 1453(c)(1).  The question we consider is whether we have jurisdiction to review the district court's order remanding this class action when the asserted basis for jurisdiction is a federal question rather than traditional diversity or CAFA minimal diversity jurisdiction.  Chan argues that § 1453(c)(1) is limited to diversity actions under CAFA.  Liberty takes a more expansive view, claiming that there is no CAFA-based

limitation and that all class actions are covered by this grant of jurisdiction.

To understand the genesis of the appeal provision and its place in the statutory structure, it is important to review the multiple provisions adopted as part of CAFA, particularly 28 U.S.C. § 1453. In broad terms, CAFA significantly expanded federal diversity jurisdiction over class and mass actions. Congress added a number of statutory provisions to the United States Code to ensure "[f]ederal court consideration of *interstate* cases of national importance." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (emphasis added) (citation omitted). One of the most notable additions is § 1332(d)(2), which was added as a new subsection in the diversity statute and allows a class action to be brought in federal court if "the matter in controversy exceeds the sum or value of $5,000,000" and "any member of a class of plaintiffs is a citizen of a State different from any defendant." This provision is noteworthy because it expands the jurisdiction of federal courts: unlike traditional diversity cases under § 1332(a), which require complete diversity (i.e., each plaintiff is a citizen of a different state than each defendant), *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806), § 1332(d)(2) supports jurisdiction when there is minimal diversity (i.e., one plaintiff is a citizen of a different state than one defendant).

To pave the way for class action cases to get into federal court, Congress also enacted a new removal provision, § 1453, as part of CAFA.[2] Section 1453(b) governs the general procedure for removing a case and eliminates some of the obstacles that apply in ordinary diversity cases.

---

[2] In addition to §§ 1332(d) and 1453, CAFA also includes §§ 1711–1715, which relate to approval of settlements in class actions.

Section 1453(c) is designed to provide a limited means, subject to strict timing controls on both the parties and the court, for appellate review of remand orders in cases removed under § 1453(b).

In examining the scope of appellate jurisdiction under § 1453, we look to the text, structure, and purpose behind the statute. *See Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (explaining that statutory interpretation involves interpreting the words in light of the statutory context, which includes the "structure, history, and purpose" of the statute). Having done so, those considerations convince us that § 1453 is limited to CAFA-based diversity cases and does not expand interlocutory appellate review to remand orders where removal is predicated on federal question jurisdiction.

We start with § 1453(a), the definitional section. Here, "the terms 'class', 'class action', 'class certification order', and 'class member' shall have the meanings given such terms under section 1332(d)(1)." Significantly, subsection (a) cross-references a second CAFA provision, as § 1332(d) was added in its entirety pursuant to CAFA. Section 1332(d)(1)'s definitions also apply to the new minimal diversity provision, § 1332(d)(2).

Subsection (b) of § 1453 then addresses removal of class actions:

> A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which this action is brought, except that such action

may be removed by any defendant without the consent of all defendants.[3]

Finally, in subsection (c), the statute spells out particularized requirements for appellate review:

> Section 1447 shall apply to any removal of a case under this section, except that notwithstanding section 1447(d), a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order.

Notably, this subsection circumscribes its applicability to a case removed "under this section," presumably meaning § 1453. By invoking the phrase "notwithstanding section 1447(d)," the statute brushes aside § 1447(d)'s traditional bar on reviewing remand orders for a narrow subset of orders, namely, "order[s] of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order."

In our view, § 1453(c)(1)'s use of "removal of a case under this section" limits the universe of appealable orders to those in class action cases brought under CAFA. That conclusion requires a few interpretative steps. The word "section" is best understood to reference an entire statutory

---

[3] Subsection (d) is the exception provision. It lists three categories of claims, not applicable here, that fall outside the scope of § 1453 when no other claims are raised in a case.

section and, because the statute uses the phrase "under *this* section," it refers to the statutory section in which the language appears, namely, § 1453. This approach fits with the way the word "section" is used in common parlance and the normal meaning that legal dictionaries ascribe to it. *See, e.g.*, *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994); *Metro One Telecomms., Inc. v. Comm'r*, 704 F.3d 1057, 1059–60 (9th Cir. 2012); *Section*, Black's Law Dictionary (10th ed. 2014) (defining "section" as "[a] distinct part or division of a writing, esp. a legal instrument" and explaining that it is abbreviated with a section symbol, §); *Section*, Ballentine's Law Dictionary 1153 (3d ed. 1969) (defining "section" as "[a] subdivision or paragraph of a statute or code"). The text of § 1453(c)(1) itself uses "section" in the same way, stating, just before the "under this section" language, that "*[s]ection* 1447 shall apply to any removal of a case." The other circuits that have addressed the meaning of § 1453(c)(1)'s phrase "under this section" all agree that it points to removal under § 1453. *See Saab v. Home Depot U.S.A., Inc.*, 469 F.3d 758, 759 (8th Cir. 2006); *Patterson v. Dean Morris, L.L.P.*, 448 F.3d 736, 742 (5th Cir. 2006).

Construing "under this section" as a reference to § 1453 in its entirety, we also look to the other parts of the section. Section 1453(a), particularly when read in conjunction with the section as a whole, supports the reading that § 1453's reach is limited to CAFA-related diversity cases. That subsection defines relevant terms, like "class" and "class action," by reference to the diversity statute, § 1332—more specifically, to a provision added by CAFA, § 1332(d)(1), which also provides the relevant definitions for CAFA's minimal diversity provision, § 1332(d)(2). *See* 28 U.S.C. § 1453(a). On its own, the provision defines class action

broadly, but it does not stand alone.  Rather it fits within and must be read in conjunction with the entire "section."

An even stronger textual basis for reading § 1453 as excluding federal question cases comes in § 1453(b), which states that "[a] class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants."  While the text could be interpreted to cover both diversity and federal question cases (as both types of cases "may be removed . . . in accordance with section 1446"), it is most naturally read to cover only the former because the exceptions are directed to diversity cases.

In particular, § 1453(b) includes two references that are linked exclusively to diversity and fails to include similar provisions specific to federal question jurisdiction.  First, subsection (b) excepts "the 1-year limitation under section 1446(c)(1)."  Section 1446(c)(1) is titled "Requirements; Removal Based on Diversity of Citizenship," and its one-year limitation for removal applies to diversity cases alone. 28 U.S.C. § 1446(c)(1).  Second, subsection (b) permits removal "without regard to whether any defendant is a citizen of the State in which the action is brought."  The statutory basis for that prohibition is contained in § 1441(b)(2), a provision aptly titled "Removal Based on Diversity of Citizenship" that also applies only to diversity cases.  It would be strange for subsection (b) to embrace a class of cases—namely, federal question cases—to which two of its exceptions never apply.

That the final proviso in § 1453(b)—"such action may be removed by any defendant without the consent of all defendants"—is not specifically pegged to diversity, *see* 28 U.S.C. § 1446(b)(2)(A), does not change our conclusion. Although this final exception is not unique to CAFA cases, it is consistent with them and fills out the litany of applicable exceptions. The general focus on diversity cases and failure to carve out exceptions applicable only to federal question cases underscores that § 1453(b) is directed to the former type of case.

Finally, § 1453(d) further solidifies the targeted nature of § 1453. That subsection says that § 1453 "shall not apply to any class action that solely involves" three enumerated classes of state- and federal-law claims involving securities and corporate governance. Subsection (d) exactly mirrors a CAFA provision, § 1332(d)(9), which places those same three categories of claims outside of CAFA's minimal diversity provision. The overlapping scope of those two provisions buttresses the conclusion that the statutes both operate in the CAFA diversity sphere.

CAFA's legislative history supports our conclusion that the limited grant of appellate review is tied to CAFA's minimal diversity provisions. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) (explaining that the potential for unreliability of legislative history means that it cannot override statutory text, but noting that it may still inform the analysis). The Senate Report indicates that "[t]he purpose of [§ 1453(c)] is to develop a body of appellate law interpreting the legislation without unduly delaying the litigation of class actions." S. Rep. No. 109-14, at 49 (2005); *see also id.* (encouraging appellate courts to "create a . . . body of clear and consistent guidance for district courts that will be interpreting this legislation" by

"review[ing] cases that raise jurisdictional issues likely to arise in future cases"). References to "this legislation" are clearly directed to the CAFA legislation, whose additions relate almost entirely to the minimal diversity class actions. Our reading accords with what the Supreme Court has characterized as CAFA's "primary objective": "[f]ederal court consideration of *interstate* cases of national importance." *Knowles*, 133 S. Ct. at 1350 (emphasis added) (citation omitted). Indeed, the particular concerns motivating CAFA were not attendant to class actions pleading a federal question because those cases could already be removed to federal court under § 1441(a).

Although our court has not previously addressed the precise issue here, we have confronted the question whether there is appellate jurisdiction over a non-CAFA issue that was decided in an order independently appealable under § 1453(c)(1). *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012). We said that the answer is yes, analogizing to a court's ability to review any issue fairly included within an order certified for interlocutory review under 28 U.S.C. § 1292(b). *Nevada*, 672 F.3d at 672–73. We acknowledge that *Nevada* does not dictate the outcome in this case, but note that its analysis would have been wholly unnecessary if § 1453(c)(1) could already sustain an appeal from a grant or denial of remand of any class action. Thus, our precedent counsels in favor of the determination that jurisdiction is lacking here.

In reaching our conclusion, we are in good company. The Fifth, Sixth, and Eighth Circuits have all concluded that the review provisions of 28 U.S.C. § 1453(c) are limited to class actions brought under CAFA. As the Eighth Circuit put it, "we do not interpret 'class action' as it is employed in § 1453(c) to encompass *all* class actions. Rather, we must

limit § 1453(c)'s review provisions to those class actions brought under CAFA." *Saab*, 469 F.3d at 759; *see also In re UPS Supply Chain Sols., Inc.*, No. 08-0513, 2008 WL 4767817, at \*2 (6th Cir. Oct. 27, 2008); *Patterson*, 448 F.3d at 742; *Wallace v. La. Citizens Prop. Ins. Corp.*, 444 F.3d 697, 700 (5th Cir. 2006); 14C Charles Alan Wright et al., Federal Practice and Procedure § 3740 (4th ed. 2016) ("The courts of appeals thus far have been interpreting § 1453 to permit appeals of grants and denials of motions to remand only in cases ostensibly removed pursuant to CAFA."). Although the analysis in these cases is a bit cursory in tracing the statutory provisions, we agree with their ultimate focus on § 1453(c)(1) as a limited means of appealing remand orders in diversity class actions brought and removed under CAFA.

Because we lack jurisdiction to review the district court's remand order in this class action predicated on federal question jurisdiction, we dismiss Liberty's petition for permission to appeal.

## II.  District Court's Fee Award

We next turn to the district court's award of fees to Chan, which we have jurisdiction to review under 28 U.S.C. § 1291.  A district court's statutory authority to award fees is spelled out in 28 U.S.C. § 1447(c): "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  As the Supreme Court has explained, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Here, the district court's decision to remand rests entirely on the conclusion that Liberty's notice of removal was untimely

under the 30-day time limitation of the general removal statute, 28 U.S.C. § 1446(b).  Because that conclusion is incorrect, the fee award must be vacated.  *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (explaining that an award of fees is reviewed for abuse of discretion and can be overturned if it is based on an erroneous determination of law).  We offer no judgment with respect to whether federal question jurisdiction provides an appropriate basis for removal.

It is undisputed that the initial pleading did not provide a basis for removal (there being no basis for federal question jurisdiction under § 1331 or diversity jurisdiction under § 1332).  However, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  *Id.* § 1446(b)(3).

Chan's October 26, 2015 reply brief was the first filing in the present case that referenced a due process claim.  Chan relies on three earlier events (all of which occurred more than thirty days before Liberty filed its notice of removal) which Chan says started the clock by putting Liberty on notice that Chan would raise a federal due process claim.  First, Chan points to a similar motion that was filed on September 8, 2015, in the *Safeco* case, in which Safeco has the same counsel as Liberty.  Second, Chan points to an email exchange on September 17, 2015 between its counsel and Liberty's counsel agreeing to hear the declaratory judgment motion in the *Liberty* case together with the similar motion in the *Safeco* case.  Finally, Chan points to Dr. Kerbs's September 25, 2015 request for an extension of time

in the pending Illinois appellate court case, where he referred to the motions made in the *Safeco* and *Liberty* cases. The district court agreed with Chan and explained that "the September 8th, 17th and 25th documents, collectively, constitute 'other' papers from which it could be ascertained that the case was removable on the basis of a federal question." We reject this approach to notice because it runs afoul of our precedent and would place a burden on defendants to read the tea leaves and anticipate claims where none have been asserted.

For starters, the September 8 motion for declaratory judgment in one of the Washington actions—mentioned in the September 25 extension of time request in the Illinois appeal—was filed in a different case against another defendant (Safeco), so there was no "receipt by the defendant" Liberty. It simply is not enough to say that Safeco and Liberty had the same counsel. They are different parties in different lawsuits. Nor did the September 25 filing make clear that a federal claim would be raised in the *Liberty* case, let alone convert the threatened motion from one that "would be filed" to one that "had been filed."

The September 17 email exchange from Chan to Liberty's counsel discussed having a consolidated hearing on the nearly identical declaratory judgment motions against Safeco and Liberty. This communication about combining proceedings did not somehow import into the *Liberty* case the federal claim that was actually raised in the *Safeco* case.

More fundamentally, all of the documents fail to trigger the time limit because they are not "other paper[s] from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The plain language of the statute requires a paper that shows a ground for removal that was previously unknowable or

unavailable.  *See* 14C Charles Alan Wright et al., Federal Practice and Procedure § 3731 (4th ed. 2016).  Documents that raise federal questions, filed in cases other than the one at hand, did not show that Chan's case "is or has become removable."

Section 1446(b) is triggered upon "the receipt by the defendants of a paper in the action from which removability may be ascertained."  *Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 779 (9th Cir. 1994) (emphasis omitted).  For obvious reasons, "we don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove."  *Durham*, 445 F.3d at 1251. Because the focus remains on whether the *case* "is or has become removable," counsel's clairvoyant sense of what actions a plaintiff might take plays no role in the analysis. *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141–42 (9th Cir. 2013).  Under this approach, a defendant is not put to the impossible choice of subjecting itself to fees and sanctions by filing a premature (and baseless) notice of removal or losing its right to remove the case by waiting too long.  *See Durham*, 445 F.3d at 1251.

In contrast to the documents referenced by the district court, Chan's reply brief—which explicitly referenced due process—was filed in *this* litigation on October 26, 2015. We have explicitly held that a reply brief can constitute an "other paper" for purposes of § 1446(b).  *See Eyak Native Vill.*, 25 F.3d at 779.  Liberty filed its notice of removal just two days after receiving the reply brief, falling well within the thirty-day time limit established by § 1446(b)(3).

Because Liberty's notice of removal was not untimely, Liberty's arguments on that score were objectively reasonable.  Untimeliness was the sole basis for the district

court's fee award—the court did not reach the question whether federal question jurisdiction exists or whether Liberty's arguments on that ground were objectively reasonable, nor do we take a position on these issues. We vacate the district court's fee award and remand the case for proceedings consistent with this opinion.

**PETITION FOR PERMISSION TO APPEAL DISMISSED; ORDER GRANTING FEES VACATED AND REMANDED.**

Each party shall bear its own fees and costs on appeal.