Affirmed by published opinion. Judge NIEMEYER wrote the majority opinion, in which Judge DAVIS joined. Senior Judge GILMAN wrote a dissenting opinion.
OPINION
NIEMEYER, Circuit Judge:
The State of West Virginia, by its Attorney General, commenced this action in state court against CVS Pharmacy, Inc., and five other pharmacies (collectively, the “Pharmacies”), alleging that the Pharmacies sold generic drugs to West Virginia consumers without passing along to the *172 consumers the cost savings of generic drugs over brand name equivalents, in violation of West Virginia Code § 30-5-12b(g), regulating the practice of pharmacy, and the West Virginia Consumer Credit Protection Act, prohibiting “unfair or deceptive acts or practices in the conduct of any trade or commerce,” West Virginia Code § 46A-6-104, and “excess charges,” id. § 46A-7-111. The State, claiming to act in its “sovereign and quasi-sovereign capacity,” seeks injunctive relief, restitution and disgorgement of “overcharges,” recovery on behalf of the consumers of “excess charges,” civil penalties, interest, costs, and attorneys’ fees.
The Pharmacies removed the action from state court to the district court under the Class Action Fairness Act of 2005 (“CAFA”), Pub.L. No. 109-2, 119 Stat. 4 (2005), arguing that the action is a “disguised class action” and therefore was subject to removal under CAFA.
On the State’s motion, the district court ordered that the action be remanded to state court, holding that the action was not a “class action” under CAFA, but rather a “classic parens patñae action” intended to vindicate the State’s quasi-sovereign interests and the individual interests of its citizens.
We affirm, concluding that this action is not a “class action” as defined by CAFA. CAFA authorizes the removal of specified civil actions that are brought under Federal Rule of Civil Procedure 23 or a “similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.” 28 U.S.C. § 1332(d)(1)(B) (emphasis added). This action was not brought under Federal Rule of Civil Procedure 23, nor under West Virginia’s corresponding rule, West Virginia Rule of Civil Procedure 23. Rather, it was brought under a West Virginia statute regulating the practice of pharmacy and the West Virginia Consumer Credit Protection Act, neither of which includes provisions providing for a typical class action, such as provisions addressing the adequacy of representation, numerosity, commonality, and typicality requirements. Because this action was brought by the State under state statutes that are not “similar” to Federal Rule of Civil Procedure 23, we conclude that it is not removable under CAFA as a class action.
I
Attorney General Darrell McGraw commenced this action in the Circuit Court of Boone County, West Virginia, naming as defendants CVS Pharmacy, Inc., Kmart Holding Corporation, the Kroger Company, Wal-Mart Stores Inc., Walgreen Co., and Target Stores, Inc., and alleging that in filling drug prescriptions, these Pharmacies overcharged West Virginia citizens, in violation of two laws, West Virginia Code § 30-5-12b (the “Pharmacy Act”) and West Virginia Code §§ 46A-6-104 and 46A-7-111 (the West Virginia Consumer Credit Protection Act or “WVCCPA”), and thereby obtained unjust profits.
The Pharmacy Act requires pharmacists to fill prescriptions with generic drugs, when appropriate, and to pass on to the consumer the savings in the cost of the generic drugs. Thus, when a pharmacy acquires a brand name drug at $30 and a generic equivalent at $10, the pharmacy must pass on at least the $20 difference to the consumer. See W. Va.Code § 30-5-12b(g). But it must also pass on any other savings, such as the savings represented by the difference in the retail prices. See id. The Attorney General contends that violations of the Pharmacy Act also constitute violations of the WVCCPA, which prohibits “unfair or deceptive” trade practices *173 and the collection of “excess charges.” See W. Va.Code §§ 46A-6-104, 46A-7-111.
As authorized by these Acts, the West Virginia Attorney General is, in this action, seeking a temporary and permanent injunction against further violations of the Acts; “[ejquitable relief, including but not limited to restitution and disgorgement of monies obtained as a result of the overcharges”; repayment of the “excess charges” to affected consumers; civil penalties of up to $5,000 for each willful violation of the WVCCPA; pre-judgment and post-judgment interest; and costs including legal fees. The State alleges that it is pursuing these remedies “in its sovereign and quasi-sovereign capacity.”
The Pharmacies removed the action to federal court, relying on several distinct grounds for doing so, including CAFA. To justify removal under CAFA, the Pharmacies asserted that because the “complaint [was] a disguised class action” designed “to recover funds on behalf of those consumers who have allegedly paid overcharges,” it was a removable class action. In particular, they pointed to Count III, which is dedicated to the remedy of collecting, on behalf of consumers, excess charges under West Virginia Code § 46A-7-lll(l). That section provides that if “an excess charge has been made, the court shall order the [defendant] to refund to the consumer the amount of the excess charge.” Id. Noting the large number of consumers in West Virginia and prescriptions filled for them, the Pharmacies argued that Count III met CAFA’s numerosity and amount-in-controversy requirements. Because the Pharmacies are not West Virginia citizens, they also argued that minimal diversity was satisfied. Finally, because the Attorney General was seeking refunds on behalf of each affected West Virginia purchaser of generic drugs, the Pharmacies contended that the action was a representational proceeding, qualifying as a “class action” under CAFA.
The district court granted the State’s motion to remand, rejecting each of the various grounds relied on for removal. With respect to the CAFA ground, which is the only issue on appeal, the court concluded that this action was “a classic par-ens patriae action that is neither a class action nor a mass action contemplated by CAFA.” West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 748 F.Supp.2d 580, 597 (S.D.W.Va.2010). In concluding that this action was a parens patriae action, the district court noted that the WVCCPA authorized the Attorney General to act “as an administrator of the law,” independently of individual consumer complaints. Id. at 593 (quoting Manchin v. Browning, 170 W.Va. 779, 296 S.E.2d 909, 919 (1982)); see also id. at 595 (observing that the Attorney General is charged with “a freestanding consumer-protection duty”). The district court also noted that the State’s action was “imbued with a ‘disgorgement’ purpose,” “separate and apart from the interests of particular consumers in obtaining recompense.” Id. at 593. In this sense, the court explained, “the Attorney General’s paramount goal [was] to extract from the alleged wrongdoers every penny associated with the excess charges, along with civil penalties flowing to the State alone,” thereby “warning ... future violators that they [would] not long profit from consumer fraud.” Id. at 594.
The Pharmacies sought permission to appeal the CAFA portion of the district court’s order, relying on 28 U.S.C. § 1453(c)(1), and we granted their motion by order dated March 24, 2010.
II
In arguing that the district court erred in concluding that this action was not removable as a class action under *174 CAFA, the Pharmacies acknowledge that the Attorney General did not purport to bring his action as a class action but rather relied on his authority under the Pharmacy Act and the WVCCPA. But the Pharmacies argue:
It is well-settled that “in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach.”
* * *
Thus, the AG may not plead around federal jurisdiction merely by labeling his claims as brought in the state’s sovereign or quasi-sovereign capacity.
Instead, this Court must consider whether, in substance, the Amended Complaint satisfies CAFA’s requirements for a “class action.” That analysis makes clear this case is properly removed as a CAFA class action, and that the district court erred by remanding it.
(Quoting Louisiana ex rel. Caldwell v. Allstate Ins. Co., 536 F.3d 418, 424 (5th Cir.2008)). After asserting that the requirements for minimal diversity, the jurisdictional amount, and numerosity were in fact satisfied, the Pharmacies assert, as they must, that the state statutes on which the Attorney General relied were “similar” to Federal Rule of Civil Procedure 23. They explain that the statutes are “similar” because, in particular, the WVCCPA allows the Attorney General “to represent in a single action thousands of consumers who all suffer a similar injury — excess charges.” “That similarity alone,” they argue, is enough to satisfy federal removal jurisdiction.
To determine whether the Pharmacies’ position is sustainable requires a straightforward statutory analysis of CAFA.
CAFA authorizes the removal of any civil action which is a class action in which (1) “the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs,” 28 U.S.C. § 1332(d)(2); (2) “any member of a class of plaintiffs is a citizen of a State different from any defendant,” id. § 1332(d)(2)(A); and (3) there are 100 or more plaintiff class members, id. § 1332(d)(5)(B). And it defines “class action” to mean “any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.” Id. § 1332(d)(1)(B) (emphasis added).
Inasmuch as West Virginia’s action was commenced in state court, it was obviously not commenced under Federal Rule of Civil Procedure 23. Thus, it would be removable only if it were filed under a “similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.” 28 U.S.C. § 1332(d)(1)(B) (emphasis added).
A state statute or rule is “similar” to Federal Rule of Civil Procedure 23 if it closely resembles Rule 23 or is like Rule 23 in substance or in essentials. See Merriamr-Webster’s Collegiate Dictionary, 1161 (11th ed.2007). Moreover, as CAFA requires, the state statute or rule must resemble or be like Rule 23 by “authorizing an action to be brought by 1 or more representative persons as a class action.” 28 U.S.C. § 1332(d)(1)(B) (emphasis added). While the statutory definition is, to some degree, circular, Congress undoubtedly intended to define “class action” in terms of its similarity and close resemblance to Rule 23.
At its essence, Rule 23 provides that “one or more members of a class may sue or be sued as representative parties on *175 behalf of all members only if’ the criteria for numerosity, commonality, typicality, and adequacy of representation are satisfied. Fed.R.Civ.P. 23(a) (emphasis added). Without this representative nature of the plaintiffs’ action and the action’s satisfaction of the four criteria stated in Rule 23(a), the action is not a class action. It is not fortuitous that CAFA parroted Rule 23 language when it required that a “similar” state statute or rule “authoriz[e] an action to be brought by 1 or more representative persons as a class action.” 28 U.S.C. § 1332(d)(1)(B). Thus, while a “similar” state statute or rule need not contain all of the other conditions and administrative aspects of Rule 23, it must, at a minimum, proride a procedure by which a member of a class whose claim is typical of all members of the class can bring an action not only on his own behalf but also on behalf of all others in the class, such that it would not be unfair to bind all class members to the judgment entered for or against the representative party.[1] West Virginia Civil Rule of Procedure 23 would satisfy the “similarity” requirement, but it was not invoked here.
Instead, the Attorney General filed a statutorily authorized action on the State’s behalf, asserting claims arising exclusively under state consumer protection statutes. Count I alleges that the Pharmacies violated state law regulating the practice of pharmacy in West Virginia, particularly West Virginia Code, § 30-5-12b(g). Counts II and III allege that the Pharmacies violated portions of the WVCCPA, a wide-ranging statute designed “to protect consumers from unfair, illegal, and deceptive acts or practices,” as prescribed in West Virginia Code, § 46A-6-101 et seq. West Virginia ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc., 194 W.Va. 770, 461 S.E.2d 516, 523 (1995). For its enforcement the WVCCPA grants the Attorney General “broad powers to supervise, investigate and prosecute violations.” Id. at 525 (quoting Harless v. First National Bank, 162 W.Va. 116, 246 S.E.2d 270, 276 (1978)). Although the Attorney General may “[rjeceive and act on complaints,” the WVCCPA also empowers him to “commence proceedings on his own initiative.” W. Va.Code § 46A-7-102(l)(a).
Section 46A-7-111, on which Count III is based, authorizes the Attorney General to pursue refunds on behalf of consumers affected by “excess charges” and to seek civil penalties where the excess charges were repeatedly and willfully collected by a defendant. W. Va.Code § 46A-7-111(1) — (2). Here, the Attorney General has exercised both of these powers, as this action seeks repayment to consumers under § 46A-7-lll(l) and penalties inuring to the State of “up to $5,000 for each repeated and willful violation” under § 46A-7-lll(2).
These West Virginia statutes, on which the Attorney General relies for his claims, contain virtually none of the essential re *176 quirements for a Rule 23 class action. To begin with, the Attorney General is not designated as a member of the class whose claim would be typical of the claims of class members. Rather, he is authorized to file suit independently of any consumer complaints, as a parens patriae, that is, as the legal representative of the State to vindicate the State’s sovereign and quasi-sovereign interests, as well as the individual interests of the State’s citizens. Indeed, the fact that the Attorney General is acting to obtain disgorgement of ill-gotten gains, “separate and apart from the interests of particular consumers in obtaining recompense,” CVS Pharmacy, Inc., 748 F.Supp.2d at 593, validates this action as a parens patriae action. See In re Edmond, 934 F.2d 1304, 1310 (4th Cir.1991).[2]
Moreover, neither the Pharmacy Act nor the WVCCPA contains any numerosity, commonality, or typicality requirements, all of which are essential to a class action.
Finally, these Acts authorize the Attorney General to proceed without providing notice to overcharged consumers, which would also be essential in a Rule 23 class action seeking monetary damages. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).
The Pharmacies argue that the suit is nonetheless a “disguised class action” because Count III is a representative action in which the Attorney General acts on behalf of the citizens, each of whom allegedly suffered a common injury. See Louisiana ex rel. Caldwell v. Allstate Ins. Co., 536 F.3d 418 (5th Cir.2008); West Virginia ex rel. McGraw v. Comcast Corp., 705 F.Supp.2d 441 (E.D.Pa.2010). But that type of representation is not the type that would make the State’s action a class action. A class action is an action filed by an individual as a member of a class and whose claim is typical of the class members’ claims. Thus, for a representative suit to be a class action, the representative party “must be part of the class and ‘possess the same interest and suffer the same injury’ as the class members.” Gen. Tel. Co. v. Falcon, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)); see Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 338 (4th Cir.1998). The Attorney General’s claim on behalf of the State, however, does not require the State to be a member of the class, to suffer the same injury as class members, or to have a claim typical of each class member’s claim. Rather, in representing the citizens, the State acts more in the capacity of trustee representing beneficiaries or a lawyer rep *177 resenting clients, neither of which is the type of representation essential to the representational aspect of a class action.
Indeed, the West Virginia Attorney General’s role here is more analogous to the role of the EEOC or other regulator when it brings an action on behalf of a large group of employees or a segment of the public. Yet, the Supreme Court has concluded that such a regulator’s action is not a class action of the kind defined in Rule 23. For example, in General Telephone Co. v. EEOC, 446 U.S. 318, 334 & n. 16, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), the Supreme Court held that a sex-discrimination suit brought by the EEOC under Title VII was “not properly characterized as a ‘class action’ subject to the procedural requirements of Rule 23.” The Court reached that conclusion despite the fact that the suit sought back pay and other relief on behalf of all of the employer’s adversely affected employees in California, Idaho, Montana, and Oregon. Id. at 321, 324, 100 S.Ct. 1698. Likewise, in Edmond, we held that a bankruptcy claim brought by the Maryland Attorney General’s Office “on behalf of itself and all [affected Maryland] consumers” did not need to comply with Rule 23, even though one of the claim’s primary purposes was to provide individual citizens with refunds pursuant Maryland’s Consumer Protection Act. See 934 F.2d at 1306; see also id. at 1310-13.
Much like the statutes at issue in General Telephone and Edmond, the WVCCPA authorizes the Attorney General to bring enforcement actions against violators and, in so doing, to pursue relief on behalf of aggrieved individuals. See Scott Runyan, 461 S.E.2d at 523-24. Yet that type of representation by the State is no more characteristic of the representational nature of a class action than were the claims in General Telephone and Edmond. Neither the State nor the Attorney General is a member of the class purportedly represented, and neither suffered the same injury as the citizens in that class.
 The Pharmacies nonetheless argue that CAFA’s legislative history supports their position. In particular, they point to Senate Report 109-14, which outlines the Senate Judiciary Committee’s views, and several floor statements made during debate on the Act. Senate Report 109-14, however, was issued 10 days after CAFA was signed into law, and for that reason alone, it is a questionable source of congressional intent. See Coll. of Dental Surgeons v. Conn. Gen. Life Ins. Co., 585 F.3d 33, 38 n. 2 (1st Cir.2009); see also Weinberger v. Rossi, 456 U.S. 25, 35, 102 S.Ct. 1510, 71 L.Ed.2d 715 (1982) (“[P]ost hoc statements of a congressional Committee are not entitled to much weight”). Moreover, while some floor statements cited by the Pharmacies are favorable to their arguments, others cited by the Attorney General, from the same Senator and the same page of the Congressional Record, point in the opposite direction. Compare 151 Cong. Rec. S1163 (daily ed. Feb. 9, 2005) (statement of Sen. Charles Grassley that a subsequently defeated amendment intended to exempt suits brought by state attorneys general would have “create[d] a very serious loophole”), with id. (statement of Sen. Charles Grassley that “the amendment [was] not necessary” because “cases brought by State attorneys general will not be affected by this bill”). This legislative history is hardly probative.
In sum, we conclude that because the action before us was not brought under Federal Rule of Civil Procedure 23 or a “similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action,” 28 U.S.C. § 1332(d)(1)(B), the district court did not *178 err in remanding this case to the Circuit Court for Boone County.
Ill
The West Virginia Attorney General initially filed this action in a West Virginia state court to enforce, on behalf of West Virginia and its citizens, state consumer protection laws applicable only in West Virginia. Were we now to mandate that the State was not entitled to pursue its action in its own courts, we would risk trampling on the sovereign dignity of the State and inappropriately transforming what is essentially a West Virginia matter into a federal case. The Pharmacies nonetheless rationalize such a transformation on the basis that the Attorney General somehow mispleaded his case, disguising what would otherwise be a CAFA class action.
The Pharmacies’ approach, however, would have to ignore the Attorney General’s stated basis for his action of seeking to vindicate West Virginia’s interests in how pharmacies may charge West Virginia consumers in filling prescriptions. If we accept the Attorney General’s good faith in pleading his claims — and we are given no reason not to — the Pharmacies have no basis, real or postured, to assert that this is an “interstate case of national importance,” the defining federal interest animating CAFA’s removal provisions. See CAFA, Pub.L. No. 109-2 § 2(b)(2).
To be sure, CAFA does protect important federal interests in addressing state abuses in interstate class actions. It was enacted to prevent States from keeping “cases of national importance out of Federal court” and making “judgments that impose their view of the law on other States and bind the rights of the residents of those states.” Id. § 2(a)(4). It thus assures that federal courts decide “interstate cases of national importance.” Id. § 2(d)(2). But CAFA is also sensitive to deeply-rooted principles of federalism, reserving to the States primarily local matters. See Johnson v. Advance Am., Cash Advance Centers of S.C., Inc., 549 F.3d 932, 938 (4th Cir.2008); see also 28 U.S.C. § 1332(d)(3)—(5).
In this case, where West Virginia has raised no federal question and where all persons on whose behalf West Virginia has filed this action are West Virginia citizens, the “claim of sovereign protection from removal [arises] in its most powerful form.” In re Katrina Canal Litig. Breaches, 524 F.3d 700, 706 (5th Cir.2008). Such sovereign protection derives from our constitutional structure and serves the important function of preserving the “dignity” to which states are entitled “as residuary sovereigns and joint participants in the governance of the Nation.” Alden v. Maine, 527 U.S. 706, 713-14, 748-49, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); see also Idaho v. Coeur d’Alene Tribe, 521 U.S. 261, 268, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). It does so by preventing States from being involuntarily “dragged” into any court — a prerogative of sovereigns well established at the time of the founding. See Alden, 527 U.S. at 715-18, 119 S.Ct. 2240.
While it is true that West Virginia voluntarily entered into its own courts to enforce its laws, it did not voluntarily consent to removal of its case to a federal court, and a federal court should be most reluctant to compel such removal, reserving its constitutional supremacy only for when removal serves an overriding federal interest. See Tennessee v. Davis, 100 U.S. 257, 266-67, 25 L.Ed. 648 (1880). It is telling that “[n]one of the cases or founding history speak directly to” the question of “whether a state as a plaintiff suing defendants over whom it has regulatory *179 authority in state court under its own state latos may be removed to federal court,” except when the state raises a federal question. Katrina Breaches, 524 F.3d at 711. Comity demands that we step most carefully before “snatch[ing] cases which a State has brought from the courts of that State, unless some clear rule demands it.” Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 21 n. 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).
We conclude, in the circumstances presented here, that CAFA does not clearly demand that West Virginia’s action, which is essentially a parens patriae type of action for enforcement of its own laws on behalf of itself and its citizens, be removed to federal court, even though the Pharmacies are citizens of States different from West Virginia. The Pharmacies are summoned to West Virginia courts only because they do business in West Virginia and, while there, allegedly violated its laws.
We emphasize, however, that even as our interpretation of CAFA recognizes West Virginia’s important sovereign interests, it should not be taken as an interpretation that lessens CAFA’s scope and important federal purposes. We simply conclude that removal of this action does not serve those federal interests as articulated in CAFA.
Accordingly, the district court’s order remanding this matter to the Circuit Court for Boone County is

AFFIRMED.

. The dissent contends that for CAFA purposes, an action is “similar” to a class action when it is brought under a procedure which "authorizes a single person or a small group of people to represent the interests of a larger group.” Post, at 179 (quoting Black’s Law Dictionary 284 (9th ed.2009)). Although this definition captures an important aspect of class actions, it is also incomplete. All class actions are representative in nature; but not all representative actions are necessarily class actions. See, e.g., General Telephone Co. v. EEOC, 446 U.S. 318, 333-34, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); In re Edmond, 934 F.2d 1304, 1313 (4th Cir.1991). In this regard, Rule 23’s requirement that the representative party be a member of the class whose claim is typical of the class members’ claims differentiates the representative nature of class actions from the larger body of representative actions.

. The dissent suggests that the Attorney General "does not have a quasi-sovereign interest” in Count III because the reimbursement sought under West Virginia Code § 46A-7-111(1) would flow directly to an identifiable group of consumers, rather than to the State or its citizens generally. Post, at 182. From this, the dissent concludes that Count III does not state a valid parens patriae claim and that the action as a whole must be classified as a class action. Id. at 181-83.
While the parens patriae analysis set forth in Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 607, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), and relied upon in Louisiana ex rel. Caldwell v. Allstate Ins. Co., 536 F.3d 418, 425-28 (5th Cir.2008), is helpful in some respects, it is not a substitute for the similarity standard set forth in CAFA. We are presented here not with the question of whether the instant action is either a parens patriae action or a CAFA class action, but simply whether it is a CAFA class action. And, while we conclude that this action is a parens patriae action, based on the State's deterrence and consumer protection interests, that conclusion is not essential to the separate, and more meaningful determination that the action in this case was not brought under a procedure "similar” to Rule 23.