**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AU Optronics Corporation; AU
Optronics Corporation America,

*Petitioners,*

v.

State of South Carolina,

*Respondent.*

No. 11-254

LG Display Co., Ltd.; LG
Display America, Inc.,

*Petitioners,*

v.

State of South Carolina,

*Respondent.*

No. 11-255

On Petitions for Permission to Appeal
from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., District Judge.
(3:11-cv-00731-JFA; 3:11-cv-00729-JFA)

Argued: September 18, 2012

Decided: October 25, 2012

Before KING, DUNCAN, and KEENAN, Circuit Judges.

Petitions for permission to appeal granted and remand decisions affirmed by published opinion. Judge King wrote the opinion, in which Judge Duncan and Judge Keenan joined.

---

**ARGUED:** William Walter Wilkins, NEXSEN PRUET, Greenville, South Carolina, for AU Optronics Corporation and AU Optronics Corporation America. Henry L. Parr, Jr., WYCHE, PA, Greenville, South Carolina, for LG Display Co., Ltd., and LG Display America, Inc. Susan Campbell, MCGOWAN, HOOD & FELDER, LLC, Columbia, South Carolina, for State of South Carolina. **ON BRIEF:** Christopher Alan Nedeau, Carl Lawrence Blumenstein, Veronica Lashawn Harris, NOSSAMAN, LLP, San Francisco, California; Kirsten E. Small, NEXSEN PRUET, Greenville, South Carolina, for AU Optronics Corporation and AU Optronics Corporation America. Wallace K. Lightsey, Sarah S. Batson, Wade S. Kolb, III, WYCHE, PA, Greenville, South Carolina; Michael R. Lazerwitz, CLEARY GOTTLIEB STEEN & HAMILTON, LLP, New York, New York, for LG Display Co., Ltd., and LG Display America, Inc. Alan M. Wilson, Attorney General, C. Havird Jones, Jr., Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Columbia, South Carolina; Chad A. McGowan, MCGOWAN, HOOD & FELDER, LLC, Rock Hill, South Carolina, for State of South Carolina.

---

## OPINION

KING, Circuit Judge:

Defendants AU Optronics Corporation and AU Optronics Corporation America (together, "AU Optronics") and LG Display Co., Ltd., and LG Display America, Inc. (together, "LG Display"), seek to appeal the district court's rejection of their

assertions of federal court jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). The State of South Carolina initiated these cases in state court, alleging violations of the State's Antitrust Act and its Unfair Trade Practices Act ("SCUTPA"). AU Optronics and LG Display removed the cases to the District of South Carolina, invoking CAFA and general diversity principles. By virtually identical opinions of September 14, 2011, the district court remanded the proceedings to the state court. *See South Carolina v. AU Optronics Corp.*, No. 3:11-cv-00731 (D.S.C. Sept. 14, 2011); *South Carolina v. LG Display Co., Ltd.*, No. 3:11-cv-00729 (D.S.C. Sept. 14, 2011) (collectively, the "Remand Decisions"). The defendants have filed separate petitions for permission to appeal the Remand Decisions, contending that the court erred in deeming CAFA's jurisdictional requirements not satisfied. As explained below, we grant the petitions for permission to appeal, reject the defendants' contention concerning CAFA jurisdiction, and affirm the Remand Decisions.[1]

## I.

### A.

These nearly identical lawsuits were initiated by the State on February 18, 2011, in the state court of Richland County, South Carolina. The complaints alleged that the defendants — generally described as manufacturers of liquid crystal display ("LCD") panels — had engaged in a price-fixing conspiracy from 1996 through 2006.[2] The State sought relief from the

---

[1]After the petitions for permission to appeal were filed in this Court, the State sought consolidation of the appellate proceedings for oral argument and disposition. On July 16, 2012, we denied the State's request. AU Optronics and LG Display thereafter submitted separate briefs and the cases were separately argued. Having now fully considered the briefs and arguments presented by the parties, we consolidate the appellate proceedings for disposition.

[2]The complaints differ in one respect. Because LG Display pleaded guilty to federal criminal charges emanating from the alleged conspiracy, *see* 15 U.S.C. § 1, the State's lawsuit against LG Display contains a paragraph entitled "Criminal Conspiracy to Fix Prices." No similar allegation is made in the AU Optronics action.

defendants in three common respects: civil forfeitures for violations of the Antitrust Act, *see* S.C. Code §§ 39-3-130, -180; statutory penalties for violations of SCUTPA, *id.* § 39-5-110; and restitution on behalf of South Carolina citizens for violations of SCUTPA, *id.* § 39-5-50.[3]

On March 25, 2011, the defendants removed these cases to the District of South Carolina. Each notice asserted three grounds for removal: (1) that the case is a class action removable under CAFA, 28 U.S.C. §§ 1332(d), 1453; (2) that it is also a mass action removable under CAFA; and (3) that it is removable under general diversity jurisdiction, as embodied in 28 U.S.C. § 1332(a). The common theory underlying removal is that, even though the State is the only named plaintiff, the "real parties in interest" to the restitution claims are the citizens of South Carolina who purchased products utilizing LCD panels manufactured by the defendants. More specifically, the defendants maintained that, when those citizens are properly viewed as plaintiffs, both cases satisfy CAFA's requirements for mass and class actions, and the proper — albeit unnamed — plaintiffs are completely diverse from AU Optronics and LG Display.[4] On April 24, 2011, the State moved to remand these cases to state court for lack of subject matter jurisdiction, contending that CAFA's requirements for jurisdiction are not satisfied, and that the State, as the only named plaintiff, is not a citizen for purposes of diversity jurisdiction.

---

[3]The restitution provision at issue in the complaints is found in SCUTPA and provides that,

> [t]he court may make such additional orders or judgments as may be necessary to restore to any person who has suffered any ascertainable loss by reason of the use or employment of such unlawful method, act or practice, any moneys or property, real or personal, which may have been acquired by means of any practice declared to be unlawful in this article.

S.C. Code § 39-5-50(b).

[4]The AU Optronics defendants are Texas and Taiwan corporations, and the LG Display defendants are California and Korea corporations.

## B.

On August 22, 2011, the district court heard argument on the State's remand motions. Three weeks later, the court remanded both cases to state court. In so ruling, the court first decided that the cases failed to satisfy CAFA's minimal diversity requirement. *See* Remand Decisions 10. As the court recognized, class and mass actions are subject to the jurisdictional dictates of 28 U.S.C. § 1332(d), which provides, inter alia, that the parties in such actions need only be *minimally diverse* from one another to justify removal to federal court. This minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See* § 1332(d)(2)(A). Though the defendants in these cases are citizens of Taiwan, Korea, Texas, and California, *see supra* note 4, South Carolina is not a citizen of any state for purposes of diversity jurisdiction. *See Moor v. Alameda County*, 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."). Thus, minimal diversity does not exist among the named parties, as the district court explained. *See* Remand Decisions 5.

In light of the defendants' contention that South Carolina citizens are real parties in interest in these cases, the district court also recognized the proposition that "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Remand Decisions 5 (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)). Nevertheless, the court determined that these proceedings were *parens patriae* lawsuits, and that South Carolina had asserted a quasi-sovereign interest therein, as opposed to the private interests of a subset of its population. *Id.* at 9-10.[5] That framing of the complaints, the court

---

[5]*Parens patriae*, literally "parent of the country," is a doctrine that provides a state with standing to sue as a guardian of its citizens when the state can "articulate an interest apart from the interests of particular private

ruled, rendered South Carolina more than a nominal party to these proceedings. *Id.* at 9-11. The court declined to parse the complaints on a claim-by-claim basis, and it rejected the defendants' contention that the real parties in interest to the restitution claims are citizens of South Carolina, and not the State. Thus, the court did not include those citizens in its diversity analysis. Rather, the court focused on the nature of the cases as *parens patriae* actions and distinguished them from proceedings where a state is pursuing claims on behalf of private parties. The court explained that,

> [u]nder a wholesale approach, the case[s are] *parens patriae* action[s], where the State has a clear quasi-sovereign interest in enforcing its own antitrust and consumer protection laws. Based on this recognized quasi-sovereign interest, the State is a real party in interest to the action[s], and there is no need to pierce the pleadings. As such, minimal diversity does not exist.

*Id.*

Finally, the district court acknowledged that, in addition to seeking civil forfeitures and statutory penalties, which South Carolina is unquestionably entitled to do, the State was also seeking restitution on behalf of individual citizens. Remand Decisions 10-11. The court declined, however, to permit the restitution claims to transform these cases into proceedings

---

parties." *LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 771 (7th Cir. 2011) (internal quotation marks omitted). A state may sue on behalf of its citizens as *parens patriae* when the interests of a group of citizens are at stake, as long as the state is also pursuing a quasi-sovereign interest. *See United States v. Johnson*, 114 F.3d 476, 481-82 (4th Cir. 1997); *In re Edmond*, 934 F.2d 1304, 1310 (4th Cir. 1991) ("The state must be more than a nominal party without a real interest of its own; it must articulate an interest apart from the interests of . . . particular private parties . . . ." (internal quotation marks omitted)).

where South Carolina citizens may be deemed real parties in interest. The court explained that

> it is possible for a State to have multiple interests in a case, including some that are quasi-sovereign and some that are not. While individual consumers may benefit from the restitution sought by the State in [these cases], the remedies sought in [these cases] also generally inure to all residents of South Carolina by making it less likely these defendants will engage in future price-fixing and by recovering taxpayer money paid to the defendants as overcharges.

*Id.* Concluding that South Carolina was properly pursuing these *parens patriae* lawsuits under its own antitrust and unfair trade practices laws, the court remanded them to the state court in Richland County.[6]

After the Remand Decisions were rendered, the defendants petitioned our Court for permission to pursue appeals under CAFA, which specifically authorizes a court of appeals to "accept an appeal from an order of a district court granting or denying a motion to remand a class [or mass] action." 28 U.S.C. § 1453(c)(1).[7] By Order of December 2, 2011, we

---

[6]Other states have pursued or are pursuing similar actions against LCD panel manufacturers, predicated on conduct similar to that alleged here. For example, multi-district litigation being pursued in a California federal court involves such cases. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal.). According to the Remand Decisions, most of those cases allege violations of federal law, and the parties in those matters have not contested federal jurisdiction. *See* Remand Decisions 2.

[7]Generally, a district court's remand to state court of a removed case is not appealable. *See* 28 U.S.C. § 1447(d) (providing that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise"). CAFA, however, creates an exception to this general proposition and permits a court of appeals to consider an appeal from a remand order. *See id.* § 1453(c)(1).

deferred ruling on the defendants' petitions for permission to appeal pending full briefing and argument.

## II.

We review de novo the question of whether a district court possessed subject matter jurisdiction under CAFA and, thus, whether a remand to state court was appropriate. *See Moffit v. Residential Funding Co., LLC*, 604 F.3d 156, 159 (4th Cir. 2010); *In re Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997). The burden of establishing federal jurisdiction for a class or mass action under CAFA is on the removing party. *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008).

## III.

In their petitions for permission to appeal, the defendants have abandoned all but one of their grounds for removal. That is, they maintain only that federal jurisdiction is proper because their cases qualify as mass actions under CAFA. A mass action is defined in CAFA as

> any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a) [that the matter in controversy exceed $75,000].

28 U.S.C. § 1332(d)(11)(B)(i).[8] To proceed as a mass action,

---

[8]The CAFA definition of a class action is codified in 28 U.S.C. § 1332(d)(1), and the jurisdictional requirements for a class action are set forth in subsections (2) through (10) thereof. Subsection (d)(11) defines a mass action, and provides that "[f]or purposes of this subsection and sec-

a civil action must therefore satisfy CAFA's minimal diversity requirement, its numerosity requirement of 100 or more persons, and its amount-in-controversy requirement that all claims, when aggregated, must exceed $5,000,000 and an individual claim must exceed $75,000. Defendants contend that these proceedings satisfy each of the mass action requirements.

### A.

### 1.

Relying on *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980), the defendants first urge us to recognize that South Carolina is a nominal or formal party only. Thus, they assert that we must, in order to properly decide the remand issue, look to the citizenship of the real parties in interest (i.e., those South Carolina citizens who purchased products with LCD panels made by AU Optronics and LG Display). Indeed, even when a state is pursuing a *parens patriae* action, "if the State is only a nominal party without a real interest of its own — then it will not have standing." *Alfred L. Snapp & Son, Inc.*

---

tion 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs." 28 U.S.C. § 1332(d)(11)(A). Thus, a mass action is subject to the same jurisdictional requirements as a class action. As relevant here, the minimal diversity jurisdictional hook is found in § 1332(d)(2)(A), which provides:

> (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
>
> > (A) any member of a class of plaintiffs is a citizen of a State different from any defendant
> >
> > . . . .

28 U.S.C. § 1332(d)(2)(A).

*v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600 (1982). For a state to be more than a nominal party in a lawsuit pursued on behalf of its citizens, the complaint must pursue a "quasi-sovereign" interest, or an interest "that the State has in the well-being of its populace." *Id.* at 602.

The defendants find arguable support for their proposition concerning the interests of individual South Carolina citizens in *Missouri, Kansas, & Texas Railway Co. v. Hickman*, 183 U.S. 53 (1901), and *Messer v. American Gems, Inc.*, 612 F.2d 1367, 1370 (4th Cir. 1980). In both matters, the party that initiated the lawsuit was determined to be a nominal party only, rather than the real party in interest. In *Hickman*, the Supreme Court ruled that there was federal jurisdiction where the plaintiff was a state, but also where the real and substantive plaintiffs in the controversy were real people who were citizens of a different state than the defendants. *See* 183 U.S. at 60-61. The Court explained that the citizenship of those individuals counted toward diversity because any recovery in the action would "not inure to the benefit of the state as a state in any degree." *Id.* at 59 (explaining that the state is the real party in interest when "the relief sought is that which inures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate").

More recently, in our *Messer* decision, we explained that, in a wrongful death action, the citizenship of the beneficiary, rather than the administrator, must be taken into account in the diversity analysis. *See* 612 F.2d at 1370-71. AU Optronics and LG Display thus contend that the restitution being sought by the State will inure to the benefit of specific South Carolina citizens and, as in *Hickman* and *Messer*, those beneficiaries are real parties in interest who must be taken into account in our diversity analysis.

2.

AU Optronics and LG Display are correct in asserting that South Carolina seeks restitution on behalf of certain of its citi-

zens. As the district court recognized in the Remand Decisions, however, the State pursues other remedies authorized under its Antitrust Act and SCUTPA, each of which inure to the benefit of the State's treasury. The court, in the removal proceedings, analyzed the State's actions in their entireties, focusing on its *parens patriae* role in the claims alleged. The defendants contend in their petitions that we should now adopt and apply what is referred to as the "claim-by-claim approach" — as opposed to the "whole-case approach" — as the proper analysis for our jurisdictional inquiry. Under the claim-by-claim approach, a court must dissect the complaint and decide whether the state is the beneficiary of each basis for relief. If any party other than the state itself would benefit from a particular claim — such as restitution — such party should be deemed a real party in interest and thus a plaintiff. The whole-case approach, on the other hand, requires the court to consider the complaint in its entirety and decide from the nature and substance of its allegations what interest the state possesses in the lawsuit as a whole.

Our sister circuits have disagreed somewhat on whether to apply the "whole-case approach" or the "claim-by-claim approach" to the resolution of similar jurisdictional disputes. For example, the Ninth Circuit, in *Nevada v. Bank of America Corp.*, recently held that the State of Nevada was the real party in interest in its *parens patriae* action against a mortgage lender, even though some relief was being sought on behalf of individual citizens. *See* 672 F.3d 661, 670 (9th Cir. 2012). The court of appeals reasoned that "Nevada brought this suit pursuant to its statutory authority . . . because of its interest in protecting the integrity of mortgage loan servicing." *Id.* The court concluded, applying the whole-case approach, that "Nevada's sovereign interest in protecting its citizens and economy from deceptive mortgage practices is not diminished merely because it has tacked on a claim for restitution." *Id.* Similarly, the Seventh Circuit in *LG Display Co., Ltd. v. Madigan*, another of the LCD panel price-fixing cases, rejected the claim-by-claim approach in favor of the

whole-case approach and held, based on the "essential nature and effect of the proceeding," that the State of Illinois was the real party in interest in the lawsuit. *See* 665 F.3d 768, 772 (7th Cir. 2011).

The Fifth Circuit, on the other hand, has applied the claim-by-claim approach. *See Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 431 (5th Cir. 2008). The *Caldwell* case was an antitrust action brought by Louisiana against several insurance companies for conspiring to suppress competition. As part of the relief sought, Louisiana requested treble damages on behalf of its citizens. The defendants removed the case to federal court, arguing that, "although labeled *parens patriae*, [the] case [was] in substance and fact a 'class action' or a 'mass action'" under CAFA. *Id.* at 423. The Fifth Circuit applied the claim-by-claim approach and determined that Louisiana's consumers were the real parties in interest with respect to the treble damages claim. *Id.* at 429-30. The court of appeals reasoned that, even though Louisiana possessed a quasi-sovereign interest in pursuing the balance of its claims, individual consumers were properly included in the diversity analysis because a treble damages award would benefit them. *Id.* Concluding that such consumers were Louisiana citizens and diverse from the insurance companies, the court upheld diversity jurisdiction and declined to mandate that the case be remanded to state court. *Id.* at 430.

### B.

We have never directly addressed the issue of whether the whole-case approach or the claim-by-claim approach should be utilized in situations such as this. Our recent decision in *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, however, is somewhat instructive. *See* 646 F.3d 169 (4th Cir. 2011). There, West Virginia's Attorney General initiated a lawsuit against several pharmacies for their failure to pass along certain cost savings to consumers on generic prescription drugs, in contravention of West Virginia law. The defen-

dants removed the action under CAFA, and the district court remanded on the State's motion. After granting the defendants' petition for permission to appeal, we affirmed the remand order. Even though West Virginia's request for relief included restitution and repayment of "excess charges" to affected consumers, we ruled that the proceeding was not properly a class action under CAFA because it was being pursued under West Virginia statutes that were insufficiently "similar" to the procedures mandated by Federal Rule of Civil Procedure 23, as required by CAFA's class action definition. *See id.* at 177-78.[9]

Our *CVS Pharmacy* decision involved a dispute regarding whether the case should be considered as a "class action" under CAFA, rather than whether a CAFA "mass action" was alleged, and our decision did not reach or address the issue of minimal diversity.[10] The panel majority, however, recognized that the case was "essentially a *parens patriae* type of action

---

[9]As we explained in *CVS Pharmacy*, CAFA "defines 'class action' to mean 'any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'" *CVS Pharm.*, 646 F.3d at 174 (citations and emphasis omitted).

[10]In response to a dissenting opinion, the panel majority in *CVS Pharmacy* specifically declined to reach the issue we face today, explaining that

> [t]he dissent suggests that the Attorney General "does not have a quasi-sovereign interest" in Count III because the reimbursement sought . . . would flow directly to an identifiable group of consumers, rather than to the State or its citizens generally. . . . From this, the dissent concludes that Count III does not state a valid *parens patriae* claim and that the action as a whole must be classified as a class action. . . . [W]hile we conclude that this action is a *parens patriae* action, based on the State's deterrence and consumer protection interests, that conclusion is not essential to the separate, and more meaningful determination that the action in this case was not brought under a procedure "similar" to Rule 23.

646 F.3d at 176 n.2.

for enforcement of [West Virginia's] own laws on behalf of itself and its citizens," and explained that the State possessed a quasi-sovereign interest in the right to enforce its own consumer protection laws in its own courts. *CVS Pharm.*, 646 F.3d at 176, 179. Applying the principles of *CVS Pharmacy*, South Carolina's Attorney General is plainly authorized to pursue a *parens patriae* action in state court, on behalf of South Carolina citizens, for violations of the State's antitrust laws and SCUTPA. Moreover, like West Virginia in *CVS Pharmacy*, South Carolina possesses a quasi-sovereign interest in doing so.

Similar to West Virginia in *CVS Pharmacy*, and also to Nevada in *Bank of America Corp.* — and unlike Louisiana in *Caldwell* — the State of South Carolina "seeks substantial relief that is available to it alone." *Bank of Am. Corp.*, 672 F.3d at 672. The statute under which Louisiana sought treble damages in *Caldwell* provided, in part, that "*[a]ny person who is injured . . . by reason of any act or thing forbidden by this Part may sue . . . and shall recover threefold the damages.*" La. Rev. Stat. Ann. § 51:137 (emphasis added). The *Caldwell* statute "plainly contemplated individual enforcement," something not authorized by the relevant provisions of South Carolina's Antitrust Act or SCUTPA. *See West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 748 F. Supp. 2d 580, 597 (S.D. W. Va. 2010). In the matters before us, moreover, "there is no doubt that the Attorney General has statutory authority to pursue such claims." *Bank of Am. Corp.*, 672 F.3d at 670.

South Carolina's Antitrust Act specifically subjects violators to civil forfeitures, "to be recovered by an action in the name of the State, at the relation of the Attorney General." S.C. Code § 39-3-180. Meanwhile, SCUTPA authorizes the Attorney General, "acting in the name of the State," to seek civil penalties and forfeitures, as well as injunctive relief, when the court finds that a violation of SCUTPA has occurred. *Id.* § 39-5-110. SCUTPA also authorizes the Attor-

ney General to pursue an action in the name of the State seeking injunctive relief if there is reason to believe someone is violating the Act. *See id.* § 39-5-50(a). Thus, each of these statutes is specifically enforceable by the State's Attorney General, who is authorized to pursue the claims being alleged in the name of the State.

As explained by the Ninth Circuit in *Bank of America Corp.*, "[t]he Complaint, read as a whole, demonstrates that [the State] is the real party in interest in this action." 672 F.3d at 672. South Carolina's claims for relief in these cases are each unique to the State and are consistent with its role as *parens patriae*, inasmuch as the State possesses a quasi-sovereign interest in enforcing — in state court — its laws with respect to price-fixing conspiracies. Furthermore, South Carolina is the sole named plaintiff in these lawsuits. Indeed, the provisions of the Antitrust Act and SCUTPA invoked in the complaints designate the State as the proper plaintiff.

We are therefore satisfied to resolve these petitions for permission to appeal by adopting the whole-case approach and rejecting the claim-by-claim approach. In so doing, we conclude that the nature and effect of these actions demonstrate that South Carolina is the real party in interest, a fact that is unencumbered by the restitution claims. We therefore agree with the Ninth and Seventh Circuits that a claim for restitution, when tacked onto other claims being properly pursued by the State, alters neither the State's quasi-sovereign interest in enforcing its own laws, nor the nature and effect of the proceedings. The purpose of these cases is the protection of the State's citizens and upholding the integrity of South Carolina law. The State, in these *parens patriae* actions, is enforcing its own statutes in seeking to protect its citizens against price-fixing conspiracies. That the statutes authorizing these actions in the name of the State also permit a court to award restitution to injured citizens is incidental to the State's overriding interests and to the substance of these proceedings. Those citizens are not named plaintiffs here, and they need not be con-

sidered in the diversity analysis of the State's claims. Thus, CAFA's minimal diversity requirement is not satisfied in either of these cases, and the district court properly remanded them to state court.[11]

### IV.

Pursuant to the foregoing, the petitions for appeal of AU Optronics and LG Display are hereby granted, and the Remand Decisions are affirmed.

*PETITIONS FOR PERMISSION TO APPEAL GRANTED AND REMAND DECISIONS AFFIRMED*

---

[11]Inasmuch as we resolve these proceedings on the issue of minimal diversity, we need not address or rule on the other CAFA jurisdictional requirements.