No. 11-1488 -    *Manville Personal Injury Settlement Trust; Amalgamated Bank, as Trustee for the Longview Collective Investment Funds; and California State Teachers' Retirement System v. Don L. Blankenship; Baxter F. Phillips, Jr.; E. Gordon Gee; Richard M. Gabrys; James B. Crawford; Bobby R. Inman; Robert H. Foglesong; Stanley C. Suboleski; J. Christopher Adkins; M. Shane Harvey; Mark A. Clemens; Elizabeth S. Chamberlin; and Richard R. Grinnan and Massey Energy Company, n/k/a Alpha Appalachia Holdings, Inc.*

Davis, Justice, dissenting:

Words cannot express how frustrated I am by the patently unfair result occasioned by the majority's decision in this case. Throughout the litigation leading up to the case *sub judice*, the Officers and Board of Directors of Massey Energy Company[1] have demonstrated nothing but blatant disregard for mine safety standards, apathetic indifference for its stipulated settlement with Manville through which the Massey Board agreed to address and remedy this misconduct, and flagrant disrespect for the circuit court's order approving and memorializing the parties' agreement and the obligations of the Massey Board thereunder. Two years later, the devil-may-care attitude exhibited by the Massey Board towards its obligation to implement mine safety standards became abundantly apparent when 29 coal miners died in Massey's Upper Big Branch Mine. Countless other West Virginia

---

[1]The term "Massey Board" will be used to refer collectively to the individual defendants below, the officers of Massey and the individual members of Massey's Board of Directors, except where the context dictates otherwise.

1

coal miners undoubtedly also have been injured and endangered by the Massey Board's failure to do what it said it would do, what it has been told by the circuit court to do, and what it is required to do under mine safety laws. Manville, in repeated attempts to hold the Massey Board accountable for its apparent abhorrence of mine safety regulations, again seeks redress through the courts of this State to compel the Massey Board to protect the coal miners employed at Massey's mines. Regretfully, however, the majority's decision in this case not only forgives the Massey Board for its misdeeds, but also fails to hold accountable those individuals whose callousness cost 29 miners their lives–men who went to work one day at the Upper Big Branch Mine and who were prevented from returning home to the families waiting for them.

I am further dismayed by the fact that, when Manville earlier sought relief from this Court to ensure the sanctity and preservation of its right to compel the Massey Board's compliance with its agreement to reform its mine safety standards, my brethren[2] rebuffed Manville's pleas for help, deferring instead to a tribunal outside of this State which had no jurisdiction to enforce the parties' earlier "Stipulation of Settlement" and accompanying order.[3] *See California State Teachers' Ret. Sys., et al. v. Blankenship, et al.*, No. 11-0839,

---

[2]Sadly, I was disqualified and, thus, unable to participate in that proceeding.

[3]In the circuit court's "Agreed Order and Final Judgment," entered June 30, 2008, the Circuit Court of Kanawha County specifically approved of the parties' "Stipulation of Settlement" and "retain[ed] continuing jurisdiction over: (a) implementation and
(continued...)

2011 WL 2119761 (W. Va. May 31, 2011) (mem.).  I am disappointed that my colleagues

did not appreciate the impact that their ruling would have upon Manville's continued quest

to do right by the coal miners of this State and to hold accountable those Massey Board

members and officers who failed to follow through on their promises.  Rather than shifting

the burden of deciding Manville's request for injunctive relief, however, the Court could

have justifiably exercised our *parens patriae* authority to stay Manville's request for

extraordinary relief from this Court.  Such a reprieve from the pending merger would have

then permitted the circuit court to rule upon Manville's pending motion for civil contempt

against Massey's Board.


The essence of *parens patriae* authority is the protection of those who cannot

protect themselves and means "parent of the country." *LG Display Co., Ltd. v. Madigan*, 665

F.3d 768, 771 (7th Cir. 2011) (internal quotations and citation omitted).

> The concept of *parens patriae* has . . . been established
> in this country's jurisprudence; . . . "[t]his prerogative of *parens
> patriae* is inherent in the supreme power of every State . . . [and]
> is a most beneficent function . . . often necessary to be exercised
> in the interest of humanity, and for the prevention of injury to
> those who cannot protect themselves."

*Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 425 (5th Cir. 2008) (quoting

---

[3](...continued)
enforcement of the terms of the Settlement and this Judgment; and (b) the Settling Parties
[Manville and the individual members of the Massey Board of Directors] for the purposes
of implementing and enforcing the Stipulation and Judgment."

3

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600, 102 S. Ct. 3260, 3265, 73 L. Ed. 2d 995 (1982)) (additional citation omitted). In such cases, the exercise of the State's authority is necessary to secure and safeguard the rights of these charges because an overarching public policy interest deems their protection to be of the utmost importance. The essence of the *parens patriae* doctrine permits a state to protect a quasi-sovereign interest, such as "the health and well-being–both physical and economic–of its residents in general." *Snapp*, 458 U.S. at 607, 102 S. Ct. at 3269, 73 L. Ed. 2d 995. *Accord West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169, 172 (4th Cir. 2011) (recognizing that exercise of *parens patriae* is "intended to vindicate the State's quasi-sovereign interests and the individual interests of its citizens"); *Commonwealth of Puerto Rico ex rel. Quiros v. Bramkamp*, 654 F.2d 212, 215 (2d Cir. 1981) ("A state possesses and may assert a quasi-sovereign interest in its general economy, and in protecting the welfare of its citizens." (internal citations omitted)); *Illinois v. AU Optronics Corp.*, 794 F. Supp. 2d 845, 850 (N.D. Ill. 2011) (observing that quasi-sovereign interest "concerns a substantial segment of the State's population" (internal quotations and citation omitted)); *New Hampshire v. Hess Corp.*, 161 N.H. 426, 432, 20 A.3d 212, 216 (2011) (stating that interests to be protected through exercise of *parens patriae* "include the health, comfort and welfare of a state's citizens . . . and the general economy of the state" (citation omitted)).

Since this State's inception, the coal mining industry has been recognized as being of preeminent importance to the citizens of West Virginia. In fact, our coal mining heritage is so essential and engrained in this State that a coal miner appears on both the State Seal and the State Flag of the Great State of West Virginia. It goes without saying that West Virginia coal mines allow many West Virginians to earn a livelihood, contribute significantly to the State's economy and infrastructure, and are a near-constant topic of legislative concern. Therefore, I cannot fathom why the Court would defer ruling on a matter of such grave concern to this State that ultimately would impact the enforcement of mine safety regulations against a mine company with such a pervasive presence in and impact upon this State and its citizens.

Unfortunately, however, the damage has been done: first by the Court's denial of Manville's request for mandamus relief and now in the case *sub judice* through the majority's affirmance of the circuit court's dismissal of Manville's petitions seeking to hold the Massey Board in civil contempt. More troubling is the fact that this harm is irreversible. Massey Energy Company has now been subsumed by Alpha Appalachia Holdings, Inc., and, thus, the Massey Board is no more. Thirteen individuals, who held the fate of countless miners in their hands, can no longer be held accountable for their complacency with their status quo of evading compliance with mine safety regulations. This result is not fair, and it is not the right thing to do. Therefore, I respectfully, and vehemently, dissent.